## RAILROAD COMPANY *v.* BALDWIN.

1. The grant which the act of July 23, 1866, c. 212 (14 Stat. 210), makes to the St. Joseph and Denver City Railroad Company, "to the extent of one hundred feet in width on each side of said road where it may pass through the public domain," is absolute and *in præsenti,* and a party subsequently acquiring a parcel of such lands takes it subject to that right.
2. *Quære,* Where Congress has conferred upon a railroad corporation, organized under the laws of a State, the right of way over the public lands in a Territory, can the State, subsequently created out of that Territory, prevent the corporation from enjoying that right.

ERROR to the Supreme Court of the State of Nebraska.

This was an action by Baldwin to recover of the St. Joseph and Denver City Railroad Company, or its successor in interest, damages for entering upon his land in Nebraska, and appropri-

ating, in the construction of its road, a strip two hundred feet in width and two hundred rods in length. The company claimed a right of way over the land of that width, under the act of Congress of July 23, 1866, c. 212, entitled "An Act for a grant of lands to the State of Kansas to aid in the construction of the Northern Kansas Railroad and Telegraph." 14 Stat. 210. The first section of the act, so far as it is material in this case, is as follows: —

"Be it enacted, &c., that there is hereby granted to the State of Kansas, for the use and benefit of the Saint Joseph and Denver City Railroad Company, the same being a corporation organized under the laws of the State of Kansas, to construct and operate a railroad from Elwood, in Kansas, westwardly, *via* Maryville, in the same State, so as to effect a junction with the Union Pacific Railroad, or any branch thereof, not farther west than the one hundredth meridian of west longitude, every alternate section of land designated by odd numbers, for ten sections in width on each side of said road, to the point of intersection. But in case it shall appear that the United States have, when the line or route of said road is definitely fixed, sold any section, or any part thereof, granted as aforesaid, or that the right of pre-emption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected for the purposes aforesaid, from the public lands of the United States nearest to tiers of sections above specified, so much land in alternate sections, or parts of sections designated by odd numbers as shall be equal to such lands as the United States have sold, reserved, or otherwise appropriated, or to which the rights of pre-emption of homestead settlements have attached as aforesaid, which lands, thus indicated by odd numbers and selected by direction of the Secretary of the Interior as aforesaid, shall be held by the State of Kansas for the use and purpose aforesaid."

The fourth section is as follows: —

"That as soon as the said company shall file with the Secretary of the Interior maps of its line designating the route thereof, it shall be the duty of the said Secretary to withdraw from the market the lands granted by this act in such manner as may be best calculated to effect the purposes of this act and subserve the public interest."

The sixth section is as follows : —

"That the right of way through the public lands be, and the same is hereby, granted to said Saint Joseph and Denver City Railroad Company, its successors and assigns, for the construction of a railroad as proposed, and the right is hereby given to said corporation to take from the public lands adjacent to the line of said road, material for the construction thereof. Said way is granted to said railroad to the extent of one hundred feet in width on each side of said road where it may pass through the public domain; also, all necessary ground for station buildings, workshops, depots, machine-shops, switches, side-tracks, turn-tables, and water-stations."

When the grant was made by Congress, the land claimed by Baldwin was vacant and unoccupied land of the United States. But the line of the road over it was not definitely located until October, 1871. He acquired whatever rights he possesses in October, 1869. The defendant contends that the plaintiff took the land subject to its right of way. He contends that the grant of the right of way took effect only from the date at which the company filed its maps designating the route with the Secretary of the Interior. The District Court of the State agreed with him and gave judgment in his favor. The Supreme Court affirmed it, and to review it the cause is brought here.

*Mr. John F. Dillon* for the plaintiff in error.
*Mr. E. E. Brown, contra.*

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The act of Congress of July 23, 1866, c. 212, makes two distinct grants : one of lands to the State of Kansas for the benefit of the St. Joseph and Denver City Railroad Company in the construction of a railroad from Elwood in that State to its junction with the Union Pacific *via* Maryville; the other of a right of way directly to the company itself. The lands consisted of alternate sections, designated by odd numbers, on each side of the line of the proposed road. The grant of them was subject to the condition that if, at the time the line of the road was definitely fixed, the United States had sold any section or a part thereof, or the right of pre-emption or homestead set-

tlement had attached to it, or the same had been otherwise reserved by the United States for any purpose, the Secretary of the Interior should select an equal quantity of other lands nearest the sections designated, in lieu of those appropriated, which should be held by the State for the same purposes. The limitations upon the grant are similar to those found in numerous other grants of land made by Congress in aid of railroads. Their object is obvious. The sections granted could be ascertained only when the routes were definitely located. This might take years, the time depending somewhat upon the length of the proposed road and the difficulties of ascertaining the most favorable route. It was not for the interest of the country that in the mean time any portions of the public lands should be withheld from settlement or use because they might, perhaps, when the route was surveyed, fall within the limits of a grant. Congress, therefore, adopted the policy of keeping the public lands open to occupation and pre-emption, and appropriation to public uses, notwithstanding any grant it might make, until the lands granted were ascertained, and providing that if any sections-settled upon or reserved were then found to fall within the limits of the grant, other land in their place should be selected. Thus settlements on the public lands were encouraged without the aid intended for the construction of the roads being thereby impaired. The language of the act here, and of nearly all the congressional acts granting lands, is in terms of a grant *in præsenti.* The act is a present grant, except so far as its immediate operation is affected by the limitations mentioned. " There is hereby granted " are the words used, and they import an immediate transfer of interest, so that when the route is definitely fixed the title attaches from the date of the act to the sections, except such as are taken from its operation by the clauses mentioned. This is the construction given by this court to similar language in other acts of Congress. *Missouri, Kansas, & Texas Railway Co.* v. *Kansas Pacific Railway Co.*, 97 U. S. 491; *Leavenworth, Lawrence, & Galveston Railroad Co.* v. *United States*, 92 id. 733.

But the grant of the right of way by the sixth section contains no reservations or exceptions. It is a present absolute grant, subject to no conditions except those necessarily im-

plied, such as that the road shall be constructed and used for the purposes designed. Nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms. Those lands would not be the less valuable for settlement by a road running through them. On the contrary, their value would be greatly enhanced thereby.

The right of way for the whole distance of the proposed route was a very important part of the aid given. If the company could be compelled to purchase its way over any section that might be occupied in advance of its location, very serious obstacles would be often imposed to the progress of the road. For any loss of lands by settlement or reservation, other lands are given; but for the loss of the right of way by these means, no compensation is provided, nor could any be given by the substitution of another route.

The uncertainty as to the ultimate location of the line of the road is recognized throughout the act, and where any qualification is intended in the operation of the grant of lands, from this circumstance, it is designated. Had a similar qualification upon the absolute grant of the right of way been intended, it can hardly be doubted that it would have been expressed. The fact that none is expressed is conclusive that none exists.

We see no reason, therefore, for not giving to the words of present grant with respect to the right of way the same construction which we should be compelled to give, according to our repeated decisions, to the grant of lands had no limitation been expressed. We are of opinion, therefore, that all persons acquiring any portion of the public lands, after the passage of the act in question, took the same subject to the right of way conferred by it for the proposed road.

The fact that the right of way over land in Nebraska was granted to a corporation in Kansas does not alter the case. Nebraska was at the time a Territory of the United States, and it was entirely competent for Congress to confer upon any corporation of a State a right of way for a railroad to be constructed by it through the lands of the United States situated in that Territory. And in February, 1869, after the Territory

had become a State, its legislature, by an express enactment, authorized railroad companies organized under the laws of Kansas, Missouri, or Iowa to extend and build their roads into the State, and declared that, upon complying with certain conditions, they should possess all the powers, franchises, and privileges of railroad companies incorporated under its laws.   It is not shown that the company here has not complied with the prescribed conditions, even if such an objection could be raised by any other party than the State itself.   But independently of this consideration, where Congress has conferred upon a railroad corporation of a State a right of way over the public lands of the United States in any one of their Territories, it may be doubted whether the State subsequently created out of the Territory could prevent the enjoyment by such corporation of the right conferred.   It could do so only on the same terms that it could refuse a recognition of its own previously granted right, for in such matters the State would succeed only to the authority of Congress over the Territory.

The judgment of the Supreme Court of Nebraska must, therefore, be reversed, and the cause be remanded to it with directions that further proceedings be had in accordance with this opinion; and it is

*So ordered*

MR. CHIEF JUSTICE WAITE dissented.