[No. 670.   December 18, 1896.]

UNITED STATES TRUST COMPANY OF NEW YORK, COMPLAINANT, C. W. SMITH, RECEIVER, APPELLANTS, v. ATLANTIC & PACIFIC RAILROAD COMPANY, DEFENDANT; TERRITORY OF NEW MEXICO, INTERVENER.

CORPORATION, RAILROAD—GRANT OF PUBLIC LANDS—EXEMPTION—RIGHT OF TERRITORY TO TAX.—Where, by section 2 of an act of congress incorporating the defendant company, the right of way was granted through the public lands for the construction of a railroad and telegraph, to the extent of one hundred feet in width on each side of the road, "including all necessary grounds for station buildings, workshops, depots, machine shops, switches, sidetracks, turntables, and water stations," providing that "the right of way shall be exempt from taxation within the territories of the United States." HELD: that such grant conveyed to defendant company the title of the United States, to the lands used for the purposes named, absolutely, and the right of way within the meaning of the exemption clause included the roadbed, rails, and ties, station buildings, workshops, depots, machine shops, etc., which are not subject to taxation by the territory.

APPEAL, from an order of the Second Judicial District Court, Bernalillo County, requiring the receiver of defendant company to pay certain taxes. Reversed, BANTZ, J., dissenting.

The facts are stated in the opinion of the court.

C. N. STERRY and A. SNYDER for receiver, and EDWARD W. SHELDON and FREDERICK B. JENNINGS for United States Trust Company.

The act of congress creating the Atlantic & Pacific Railroad Company and authorizing it to build and operate a railroad from Springfield, Missouri, to the Pacific ocean, along the thirty-fifth parallel of latitude, was a valid exercise on the part of congress of powers granted by the constitution of the United States. California v. S. P. R. R., 127 U. S. 1; Luxton v. Bridge Co., 153 Id. 525; Railroad Co. v. Meyers, Id. 1.

By that act the Atlantic & Pacific Railroad Company became "an agent of the general government, designed to be employed and actually employed in the legitimate service of the government, both military and postal." A. & P. R. R. v. Peniston, 18 Wall. 5; Luxton v. Bridge Co., supra; California v. S. P. R. R., supra.

In the absence of express permission by congress, the territory of New Mexico has neither the power nor authority to tax either the franchise of the Atlantic & Pacific Railroad Company, or that portion of its railroad situated within the territory. California v. S. P. R. R., supra; Bank v. Dering, 91 U. S. 29; Latter Day Saints v. U. S., 136 Id. 3; Clayton v. People, 132 Id. 632; McCulloch v. Maryland, 4 Wheat. 316; Osborn v. Bank, 9 Id. 738; Weston v. Charleston, 2 Pet. 466.

This grant of a "right of way" was a grant of an absolute fee in the land. Railroad Co. v. Roberts, 152

U. S. 114.    See, also, Railroad Co. v. Baldwin, 103 U.
S. 429; Bybee v. Railroad Co., 139 Id. 613; U. S. v.
Telegraph Co., 50 Fed. Rep. 28; Railroad Co. v. Burr,
86 Cal. 279; Muscatine v. Railroad Co., 4 N. W. Rep.
(Iowa) 909; Hazen v. Railroad Co., 3 Gray, 560; Rail-
road Co. v. Benity, 5 Sawy. 118; 2 Wood's R'y Law,
p. 770; Robbins v. St. Paul, 22 Minn. 286; Railroad
Co. v. Allen, 22 Kan. 285.

The superstructure became a part of the "right of
way" when attached to it.    Tied. Real Prop., sec. 3;
41 Am. and Eng. Ency. Law, 41; R. A. M. Co. v. I.
G. H. Co., 24 Pac. Rep. (Cal.) 920; Kinsley v. Mc-
Farland, 19 Atl. Rep. (Me.) 442; K. I. M. Co. v. M.
E. L. & P. Co., 12 S. W. Rep. (Tex.) 489; Rowland
v. Anderson, 33 Kan. 264; Hunt v. B. S. I. Co., 98
Mass. 279; Pierce v. Emery, 32 N. H. 484; Haven v.
Emery, Id. 68; Railroad v. Cowdrey, 11 Wall. 459;
Potter v. P. B. S. Co., 122 U. S. 267; New Haven v.
Railroad, 38 Conn. 452; People ex rel. v. Cassity, 46
N. Y. 48; People ex rel. v. Commissioners, 82 Id. 459;
Milhau v. Sharp, 27 Id. 620; Santa Clara Co. v. Rail-
road, 118 U. S. 394; Chicago v. Baer, 41 Ill. 305; Mc-
Crea v. C. N. B., 66 N. Y. 489; Water Co. v. French-
town, 57 N. W. Rep. (Mich.) 268; Paris v. Water Co.,
27 Atl. Rep. (Me.) 146; Water Co. v. Board, etc., 51
N. W. Rep. (Iowa) 18.

As to the question of exemption in an exactly sim-
ilar section in the grant to the Northern Pacific Rail-
road, see Railroad v. Garland, 3 Pac. Rep. 134; Navi-
gation Co. v. Berkes Co., 11 Pa. St. 202; Railroad v.
Berkes Co., 6 Id. 70; Railroad v. Crawford Co., 48
Wis. 666; Osborne v. Railroad Co., 40 Conn. 491;
Railroad v. Commissioners, 84 N. C. 504; Worcester
v. Railroad Co., 4 Metc. (Mass.) 564; Railroad Co. v.
Berks, 2 Am. R'y Cas. 306; State v. Railroad Co., 35
N. J. Law, 537; U. S. v. Railroad Co., 150 U. S. 1.

JOHN P. VICTORY, solicitor general, for the territory.

The territory has power to tax the property of the Atlantic & Pacific Railroad Company. Organic Act, sec. 7; Rev. Stat. U. S., sec. 1851. See, also, Ins. Co. v. Canter, 1 Pet. 543, 546; 1 Fed. Cas. 660; Dred Scott v. Sandford, 19 How. 444, et seq.; Clinton v. Englebrecht, 13 Wall. 441; Hornbuckle v. Toombs, 18 Id. 655, 656.

The right of way is a mere easement, and the grant of a right of way does not carry the fee to the land. Cooley's Const. Lim. 60; Suth. Stat. Con., secs. 247, 346; Williams v. R'y Co., 50 Wis. 76; Railroad Co. v. McWilliams, 71 Iowa, 164; Kellogg v. Malin, 50 Mo. 499, 500; Railroad Co. v. Lesuer, 19 Pac. Rep. 157; Lyon v. McDonald, 78 Tex. 71; Lumby v. Railway Co., 23 Vt. 387; Railroad Co. v. Swivney, 38 Iowa, 182; Railway Co. v. Roberts, 152 U. S. 114, at 122; Trust Co. v. Railway Co., 63 Fed. Rep. 913.

The exemption of the right of way from taxation does not exempt the improvements thereon. People v. Casity, 46 N. Y. 48, 50; People v. Commissioners, 82 N. Y. 462, 463; San Francisco v. McGinn, 67 Cal. 110; People v. Shearer, 30 Id. 656; Crocker v. Donovan, 30 Pac. Rep. 377; Turney v. Saunders, 4 Scam. 527; Waller v. Hughes, 11 Pac. Rep. 122; Gold Hill v. Caledonia Co., 5 Sawy. 575.

Exemptions from taxation is the exception, and all exceptions are to be strictly construed. Railroad Co. v. Atlanta, 66 Ga. 107; 2 Cooley on Tax. 209; 1 Desty on Tax. 79; Delaware Railroad Tax Case, 18 Wall. 206; Railroad Co. v. Gaines, 97 U. S. 708; Tucker v. Ferguson, 22 Wall. 575; Hoge v. Railroad Co., 99 U. S. 355; Railroad Co. v. Sherman, 132 Id. 174; Railroad Co. v. Guffey, 120 Id. 575; Railroad Co. v. Maguire, 20 Wall. 61; Railroad Co. v. Wright, 116 U. S. 231; Rail-

road Co. v. Reid, 13 Wall. 266; Bank v. Billings, 4
Pet. 514; Railroad Co. v. Maryland, 10 How. 376;
Railroad Co. v. Dennis, 116 U. S. 667–669; Banks v.
Tennessee, 104 Id. 496, 497; Railroad Co. v. Thomas,
132 Id. 185; Schurz v. Cook, 148 Id. 409; Railroad Co.
v. Alsbrook, 146 Id. 294; Land Co. v. Minnesota, 159
Id. 529.

Smith, C. J.—This is an appeal from the order of
the district court of Bernalillo county, sitting as a
court for the hearing and trial of causes arising under
the constitution and laws of the United States, taken
by the receiver (appointed by it) of the property of
the Atlantic & Pacific Railroad Company, and by the
United States Trust Company, complainant in that
action. The order required the receiver to pay to the
treasurer of Bernalillo county taxes aggregating the
sum of $43,254.70, which were levied upon property
placed upon the assessment roll in the year 1895 by
the assessor, as property omitted by the railroad com-
pany to be returned for the year 1893, as property
omitted to be returned for the year 1894, and as prop-
erty omitted to be returned for the year 1895, with
twenty-five per cent penalty added for the year 1895.
The separate amounts of this aggregate being $13,978
for 1893, $12,768.78 for the year 1894, and $16,585.14
for the year 1895. The Atlantic & Pacific Railroad
Company was incorporated by the act of congress of
the United States approved July 27, 1866. Among the
provisions contained in its charter was one authorizing
the company to lay out, locate, construct, furnish,
maintain, and enjoy a continuous railroad and tele-
graph line from Springfield, Missouri, to the Pacific
ocean, practically along the thirty-fifth parallel of lati-
tude, and granting to it, in the second section, a right
of way through the public lands, two hundred feet in
width, with sufficient grounds for station buildings,

workshops, depots, machine shops, switches, side-tracks, turntables, and water stations; also, the power to acquire a right of way and station grounds of the same character through private lands, by condemnation proceedings provided for in the act. The second section of the act exempted from taxation within the territories of the United States the right of way. The sections referred to, and others of the charter, are hereafter, in the brief, set out in full. The Atlantic & Pacific Railroad Company afterward constructed its line of road from Isletta Junction, fifteen miles west of Albuquerque, to the Colorado river, and maintained and operated the same to such point, and beyond, from the year 1882 up to the present time, except that in January, 1894, receivers were appointed, in foreclosure proceedings commenced in the Second judicial district court of the territory of New Mexico, for the property of the Atlantic & Pacific Railroad Company; and such receivers took possession of and operated said railroad up to February 1, 1896, when, in another foreclosure proceeding, and in the same one, the present receiver, C. W. Smith, was appointed receiver of the property of the Atlantic & Pacific Railroad Company in New Mexico, Arizona, and California. In the year 1893 the railroad company returned for assessment to the assessor of Bernalillo county property of the value of $530,960 and for the year of 1894 the receivers returned property to the same value, and for the year 1895 the receivers returned property to the same value. During none of these years was the right of way, station grounds, or superstructures thereon returned for taxation by the company or by the receivers, as each claimed that the same were exempt from taxation. In the year 1895 the assessor for Bernalillo county, under the instructions of the board of county commissioners, assessed as personal property (describing the same as such) the entire superstruc-

tures of the railroad on its right of way and station grounds in Bernalillo county, although each and every part of the property so described and assessed was attached to, and a part of, the right of way and station grounds of the railroad company. A tax was levied upon each of these assessments, and subsequently, in March, 1896, the territory, upon permission of the court, filed in the foreclosure case of the United States Trust Company an intervening petition to recover such taxes. (Printed T. R.; pp. 56 to 57.) An order to show cause why the intervening petition should not be granted was properly served upon the parties to the foreclosure suit, and subsequently the United States Trust Company, the complainant in the foreclosure suit, and C. W. Smith, the receiver appointed in such suit, filed answers showing cause why the intervening petition should not be granted. (Printed T. R., pp. 78 to 89.) Subsequently an agreed statement of facts was made between the parties, and the cause submitted and heard upon such agreed statement of facts. (See Printed T. R., pp. 90 to 96.) Subsequently the court found that these assessments were valid, and ordered the receiver to pay out of the property and funds in his hands the sum of $43,254.70 (Printed T. R., pp. 97 to 105 inclusive) to the treasurer of the county. A stipulation was made between the parties, in which the territory entered its appearance herein, and in which it was agreed as to the parts of the record which should constitute a transcript in this case. (Printed T. R., pp. 4 to 5 inclusive.)

Assignments of errors: First. That the court below erred in holding that the additional assessment of $539,950 levied and assessed by the assessor of the county of Bernalillo for the year 1893 as property omitted for that year, and placed upon the assessment roll of the year 1895, was a valid assessment, and that the tax levied thereon in the year 1895 was and is a

valid lien upon the property and franchises of said railroad company now in the custody and control of the receiver of that court. Second. That the court below erred in holding that the additional assessment of $539,950 levied and assessed by the assessor of the county of Bernalillo for the year 1894 as property omitted for that year, and placed upon the assessment roll for the year 1895, was a valid assessment, and that the tax levied thereon in the year 1895 was and is a valid lien upon the property and franchises of said railroad company now in the custody and control of the receiver of that court. Third. That the court below erred in holding that the additional assessment of $539,950 together with the twenty-five per cent penalty added to such amount, levied and assessed by the assessor of the county of Bernalillo as property omitted to be returned for the year 1895, was and is a valid assessment, and that the taxes levied thereon for the said year 1895 are a valid lien upon the property and franchises of the said railroad company now in the custody and control of the court. Fourth. The court below erred in holding and decreeing that the receiver should pay to the treasurer of the county of Bernalillo the sum of $43,254.70, as taxes due from the Atlantic & Pacific Railroad Company, and the receiver thereof, for the years 1893, 1894, and 1895, upon the property placed upon the assessment roll by the assessor of Bernalillo county as omitted property, and erred as to the amount ordered to be paid as taxes for each of said years.

It has been adjudicated by the court of last resort (Railroad Co. v. Peniston, 18 Wall. 5) "that the state can impose a tax upon the property of corporations chartered by congress as agents to subserve the lawful purposes of the government. Provided that such tax does not deprive such organizations of the power to serve the government as they were intended to serve

it, it does not hinder the efficient exercise of their power." It is difficult to appreciate that the legality of a tax must be determined by its effect,—that its constitutionality is contingent upon its operation; and it is suggested that, if such consideration is decisive, the issue is not one of right, but of feasibility. The same case affirms the distinction before made by said tribunal between the franchise and property of such corporations, pronouncing the one exempt from taxation by the states, and the other liable to assessment, upon the ground that the one is upon the operation of said corporation, and the other upon their possessions, —their property; it being represented that existence in the one case is involved, but in the other efficiency only. If the tax is right or wrong, legal or unauthorized, according to its effect, it would seem that it can be placed upon the franchise as well as upon the property, providing that it should not deprive the corporation of the power to fulfill the purposes for which they were created by congress. Banks are not rendered inefficient or failures by a tax upon the right to do business, nor are railroads forced into liquidation by the exactions of the states whose area they traverse. However, res adjudicata by the supreme court of the United States constitutes the law; and it is now established, as the attribute of the nominal sovereignty of states, that they are supreme in their power of taxation upon the property within their jurisdiction with the qualification,—however, that they can not so exercise this power as to arrest or impair the operations of the general government. But it is yet to be determined whether the territories are equally absolute in their domain. Territorial governments are the anomalous creatures of the congress of the United States,—conceived, presumably, from the necessity of conditions. They possess neither sovereignty nor prerogative, but enjoy, by the grace of congress, privi-

leges specifically enumerated in the charter of their
existence.    It can not be conceived that congress, in
any contingency, contemplated that the territories
should assume powers which it surrendered in the in-
terest of the public, or interfere with its policy for the
country's comfort and safety.    It would not be legiti-
mate for congress to confer franchises accompanied
with inducements to procure their acceptance, and to
promote their operations, and, having received the
desired and expected benefits, to repudiate the favors
granted; and it would seem that to allow the territo-
ries to ignore its guaranty would be not less culpable
than to do it itself.

Section 20 of the act incorporating the Atlantic &
Pacific Railroad Company declares the object of the
act to be to promote the public interest and welfare by
the construction of said railroad and telegraph line and
keeping the same in working order, and to secure to
the government at all times, but particularly in time of
war, the use and benefits of the same for postal, mili-
tary; and other purposes.    Congress deemed it para-
mount for the country to be so connected with its
exposed western coast, that it would be protected in
the event of hostilities, and, recognizing the probability
of antagonism of interest between the sections, remote
from each other, and without the facility of communi-
cation, incorporated the Atlantic & Pacific Railroad
Company to construct a railroad and telegraph line,
and to promote the accomplishment· of said object,
bestowed privileges upon said company, in the interest
and welfare of the public, and to secure to the govern-
ment at all times, the use and benefit of such road for
postal, military, and other purposes.    Section 2 of said
act of incorporation is as follows:    "And be it further
enacted, that the right of way through the public lands
be, and the same is hereby, granted to the said Atlantic
& Pacific Railroad Company, its successors and assigns,

for the construction of a railroad and telegraph as proposed.   *   *   *   Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station buildings, workshops, depots, machine shops, switches, sidetracks, turntables, and water stations; and the right of way shall be exempt from taxation within the territories of the United States." Section 3 of said act grants "to the Atlantic & Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores over the route of said line of railway and its branches," alternate sections of the public lands.

It is manifest that congress appreciated the magnitude of the enterprise proposed, and recognized that the expenditure and difficulties involved would not be encountered except for substantial advantages that might eventually be profitably utilized. It bestowed franchises that contained privileges, and yet so connected with burdens that it recognized that one would not be available unless there was partial relief from the other by exemption from taxation and the donation of land. The right of way was granted, and its exemption from taxation within the territories of the United States declared. . It must be recognized that congress acted in good faith, and intended to contribute material, not nominal, assistance to the company, for the construction of the railroad and telegraph line for the convenience of the government at all times, and in the interest and welfare of the public. The alternate sections were granted to aid—it may be said to secure—the construction of said railroad for the safe and speedy transportation of the mails, troops, munitions of war,

and public stores over the route of the said line of railway, and doubtless the right of way exempt from taxation was conceded to encourage the company to embark in the hazardous experiment.    Congress, presumably being cognizant of the character of the country along the thirty-fifth parallel of latitude, can not be suspected, in giving a right of way, to have intended to convey valueless, barren land only, as such consideration would neither encourage nor aid in the construction of the railroad.    Congress, in announcing the object of the act of incorporation, distinctly discloses that it regarded the construction of a railroad between the proposed termini a necessity so imperative that it reserved the right to make any alterations or amendments to the act to promote the accomplishment of its object, or to repeal it altogether should it prove an obstacle to the construction of the said road.    And it is logical, indeed inevitable, that the concessions of the company should be construed with a view to carry out the congressional conception.    The right of way granted is practically nothing, if merely the one hundred feet on either side of the roadway, and it is plain that such restriction would be in contravention of the spirit that actuated congress in granting the franchise; and it may be that, if such construction had been apprehended, the franchise would have been neither sought nor accepted.    Congress proposed the construction of the railroad for the lawful purposes of the government, and for the interest and welfare of the public, and tendered the inducements it deemed sufficient to secure it,—not the right of way over the land, but the right for a railway; not the right to the soil only, but the right to a roadbed; not the right to a roadbed only, but to a roadbed equipped with ties and rails to constitute a railway over which cars should be conducted for the lawful purposes of the government; not only the right to a roadbed so furnished, but to a railroad provided

with the fixtures essential to the fulfillment by the corporation of the purposes for which it was created. If such was the purpose of congress, it should be deferred to by the territories, and no attempt inconsistent with it is legitimate. Congress, having secured for the country a valuable connection in the system, uniting the two oceans, recognized that it has received full consideration for the privileges conferred, and has not attempted to impair them; and it seems that the territories, having received incalculable advantages from the construction of the railroad through an area that appeared irredeemable, rendering it practicable for occupation, and creating opportunities for the development of its resources, should not only forbear the effort to impose burdens upon it, but should foster it by generosity in the recognition of its rights and in the bestowment of favors. The intention of congress should be broadly recognized, and its spirit graciously respected. We have indulged in these observations as suggestive of the considerations which should be potential in the construction of the act in question, and we will now apply them.

It does not appear material whether the grant of the right of way created a fee or an easement, as in either event the exemption from taxation attaches. It is difficult, however, to conceive any reason for the contention that the grant by congress of a right of way for the construction of a railroad does not operate commensurately with all other grants from the government. Grants of land by congress to aid in the construction of a railroad surrender the title of the government, and the lands do not revert, after condition broken, until forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of the law for that purpose, or through some legislation equivalent to a judgment of office found at common law. Railway Co. v. McGee,

115 U. S. 469–473.   It will be deemed, it is to be pre-
sumed, that the right of way was granted to the Atlan-
tic & Pacific corporation to aid in the construction of
a railroad, and it can not be legitimately contended
that the lands so conveyed could revert to the govern-
ment upon condition broken, except through proceed-
ings instituted by the government.   The United States
can only enforce forfeiture of its lands granted, and
the title to the right of way must consequently remain
in the grantees until the grantor resumes it on account
of the grantee's failure to earn it.   No individual can
assail the title of the government, as conveyed, on the
ground that the grantee has failed to perform the con-
ditions annexed.   21 Wall. 44.   Railroad Co. v. Bald-
win, 103 U. S. 430, contains the following:  "The right
of way for the whole distance of the proposed route
was a very important part of the aid given.   If the
company could be compelled to purchase its way over
any section that might be occupied in advance of its
location, very serious obstacles would be often imposed
to the progress of the road.   For any loss of lands by
settlement or reservation other lands are given, but
for the loss of the right of way by these means no com-
pensation is provided, nor could any be given by the
substitution of another route."   In Bybee v. Railroad
Co., 139 U. S. 679, it is declared that the distinction
between a right of way over the public lands and lands
granted in aid of the construction of the road is im-
portant in this connection.   As to the latter, the rights
of settlers and others who acquire lands by purchase or
occupation between the passage of the act and the actual
location and identification of the lands are preserved un-
impaired, while the grant of the right of way is subject
to no such condition.   It will be observed that these
decisions establish that a grant of a right of way is, if
anything, more absolute, and of a greater degree, than
the grants of alternate sections of land.   The supreme

court of the United States, in Railroad Co. v. Baldwin, 103 U. S. 429, has declared that acts similar to that under consideration are a present grant, and import a transfer of interest, so that when the route is definitely fixed the title attaches from the date of the act. It says: "The grant of the right of way by the sixth section contains no reservations or exceptions. It is a present, absolute grant, subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purposes designated. Nor is there anything in the policy of the government with respect to the public land which would call for any qualification of the terms. Those lands would not be the less valuable for settlement, by a road running through them. On the contrary, their value would be greatly enhanced thereby." Says the court in the opinion above referred to (139 U. S. 674): "The act making the grant in aid of this road does not, in its words of conveyance, differ materially from a large number of similar acts passed by congress in aid of the construction of roads in different parts of the west, which have been considered by this court as taking effect in praesenti, although the particular lands to which the grant is applicable remain to be selected and identified when the road is located, and the map is filed with the secretary of the interior." In Railway Co. v. Roberts, 152 U. S. 116, it is announced, not as obiter dictum, but as the court's conclusion upon an issue involved, that the right of way granted by congress to the Missouri, Kansas & Texas Railway through lands reserved for the use and occupation of the Osage Indians vested the title to the lands appropriated for said way, to wit, two hundred feet in width, in said company, either upon the passage of the act, or the construction of the road. The supreme court of Oklahoma on September 10, 1896, decided as follows in the case of Churchill v. Railway Co.: "An act of congress in-

vesting and empowering a railway company with the right of way of locating, constructing, owning, equipping, operating, using, and maintaining a railway through and over public land, and providing that said company is authorized to take and use, for all purposes of a railroad, a right of way over said public land, is a present, absolute grant.''

We can but accept these authorities as conclusive as to the effect of a grant of a right of way by congress to aid in the construction of a railroad through the the public domain. That the title of the government to the lands granted to the company passes absolutely to the company, we must regard as adjudicated, and we will now address ourselves to the consideration of the elements that compose a right of way as intended by congress.

The general rule is that fixtures once annexed to the freehold become part of the realty, where the intention is clear that they should be permanently connected with it. It will not be contended that the ties and rails were temporarily affixed to the roadbed, or that they could be removed without material injury to the freehold. Being annexed to the roadbed for continuous use, and the roadbed being valueless without them, they become as much a part of the right of way as the roadbed. Attached to the roadbed, they are absolutely subject to the mortgages on the road at the time of their attachment, and foreclosure involves them no less than the roadbed. Says the supreme court of the United States in Porter v. Steel Co., 122 U. S. 267, 283: ''Rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage will be held by the lien of such mortgage in favor of bona fide creditors, as against any contract between the furnisher of the property and the railroad company containing stipulations'' that the title to the property shall not pass until the property is paid for, and reserv-

ing to the vendor the right of removing the property. In U. S. v. New Orleans R. R., 12 Wall. 362, it is stated that, if the company give a mortgage for the purchase money at the time of the purchase, such mortgage, whether registered or not, has precedence of the general mortgages. This rule, however, fails when the property purchased is annexed to a subject already covered by the general mortgage, and becomes part thereof, as when iron rails are laid down and become part of the railroad. In the case of U. S. v. Denver & R. G. R'y Co., 150 U. S. 12, it is declared that all necessary appurtenances of all railroads may fairly be regarded as parts or portions of the railroad whose construction it was the purpose of congress to aid. In its ordinary acceptation, and large sense, the term "railroad" fairly includes all structures which are necessary and essential to its operation. As already stated, it was not the intention of congress to aid in the mere construction of the roadbed or the roadway, but to aid in the construction of the "railroad," as such, which term has a far more extended signification than the mere "track" or "roadway." If the language of the act had shown an intention merely to aid in the construction of the roadbed or the roadway, it is clear that such structures as station houses, etc., would not have been included, etc.

It is true that the exemption from taxation by a state is construed with strictness in favor of the state, but it will be observed that this discrimination exists where the exemption is the act of the state as to the property within its jurisdiction, not a privilege derived from the general government for the benefit and welfare of the public in a territory belonging to the United States. The Atlantic & Pacific corporation has received no grant from the territory of New Mexico, and there is no issue between them as to the extent of benefits conferred upon one by the other. And it is

not, we conceive, legitimate, in arriving at the rights
of the territory in the premises, to consider it as though
it had created a factor, and was exacting tribute for its
favor. The United States presents no problem, asserts
no claim; having, by long acquiescence in the immu-
nity of the company from taxation, conceded that it
was in conformity with its intention. Were the con-
troversy between the government and the company,
the grant should, in the language of the supreme
court (150 U. S. 14), receive a liberal construction in
favor of the purposes for which it was enacted; and it
must be recognized that it would be illegal and oppres-
sive to substitute a different construction between the
company and the territory, to settle their respective
rights. The company derives its rights from congress,
and they should be ascertained and determined by rules
that will evolve the intention of congress, and not by
principles in the interest of a local government. In
Railroad Co. v. Barney, 113 U. S. 618, 625, Mr. Justice
Field, speaking for the court, says that acts making
grants ought to receive such a construction as will
carry out the intention of congress, however difficult it
might be to give full effect to the language used if the
grants were by instruments of private conveyance. To
ascertain that intent, we must look for the condition of
the country when the acts were passed, as well as the
purposes declared on their face, and read all parts of
them together. Mr. Justice Jackson, in U. S. v. Den-
ver & R. G. R'y Co., 150 U. S. 14, in quoting the
above rule as announced by Mr. Justice Field, says:
"Looking to the condition of the country, and the
purposes intended to be accomplished by the act, this
language of the court furnishes the proper rule of con-
struction of the act of 1875. When an act operating
as a general law, and manifesting clearly an intention
of congress to secure public advantages, or to subserve
the public interest and welfare, by means of benefits

more or less valuable, offers to individuals or to corporations, as an inducement to undertake and accomplish great and expensive enterprises, or works of a quasi public character, in or through the immense and undeveloped public domain, such legislation stands upon a somewhat different footing from merely a private grant, and should receive at the hands of the court a more liberal construction, in favor of the purpose for which it was enacted." In Railroad Co. v. Garland, 3 Pac. Rep. (Mont.) 144, Chief Justice WADE, after citing certain authorities, concludes: "It follows from these propositions that the roadbed, the rails fastened to it, station buildings, workshops, depots, machine shops, etc., constructed over, upon, and through the right of way granted to the plaintiffs, and attached to the soil, and annexed to the easement, become a part of the real estate of the railroad company." Again quoting from the opinion in the case of Railroad Co. v. Garland, supra: "It is a general rule that a grant of power to accomplish any particular enterprise, and especially one of a public nature, carries with it, so far as the grantor's own power extends, an authority to do all that is necessary to accomplish the principal object. 'It is a well known and reasonable rule, in construing a grant, that, when anything is granted, all the means to attain it, and all the fruits and effects of it, are granted also.' SHAW, C. J., in Babcock v. Railroad Corp., 9 Metc. (Mass.) 555. Here is a grant of a right of way through the public lands 'for the construction of a railroad and telegraph.' Such a grant carries with it the right to the exclusive possession of the lands described for the purpose aforesaid; to make excavations, cuts, and fills in the soil or ground; to construct a roadbed of suitable width and grade; to lay ties and rails thereon; and to erect upon the lands described as, and included in, the right of way, all buildings, shops, water sta-

tions, depots, etc., necessary and suitable to be used in constructing or operating such railroad. This right necessarily implies property in the ground itself. This property is real estate, and the title to it is a legislative grant. By virtue of this grant the railroad company acquired the same interest in the land as if it had received a deed of the land for the purpose of constructing and operating a railroad. The provision contained in section 2 of the act incorporating plaintiff, declaring that 'the right of way shall be exempt from taxation within the territories of the United States,' therefore carries with it, and exempts from taxation within the territories, the roadbed, the ties and rails thereto attached, and all the station buildings, workshops, etc., necessary for the construction and operating said railroad; and the assessment for taxation and levy for tax thereon of 'twenty miles of railroad' in the county of Custer, as mentioned and described in the complaint, which description must include the roadbed, ties and rails, and all necessary buildings attached to the soil and annexed to the easement of the right of way, was unauthorized, and is illegal and void."

We deem the foregoing principles and authorities sufficient to exclude doubt as to the intention of congress in granting a right of way, and exempting it from taxation within the territories of the United States. And, further, it appears that the second section of the act incorporating the Atlantic & Pacific Railroad Company expressly includes in the right of way all necessary grounds for station buildings, workshops, depots, machine shops, switches, sidetracks, turntables, and water stations. The second clause of said section reads as follows: "Said way is granted to said railroad company to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station buildings, workshops, depots,

machine shops, switches, sidetracks, turntables and water stations; and the right of way shall be exempt from taxation within the territories of the United States." It is plain that said clause must be construed with reference to its context, and that by such rule, it seems, "said way" is identical with the right of way referred to in the preceding clause, and that the exemption accorded by the succeeding clause includes and extends to the necessary grounds for station buildings, etc. The land being, in its virgin state, distinctly exempt; the roadbed being the land so converted; and the appurtenances,—rails and ties, station buildings, workshops, depots, machine shops, necessary for the construction and operation of the railroad, becoming, by annexation, a part of the realty,—it is inevitable that the aggregate land, roadbed, rails and ties, and said appurtenances, constitute the right of way contemplated by congress. A less consideration could have been no inducement to the company to accept the franchise, and that it should now be deprived of this advantage, distinctly conferred by the supreme authority creating it, by a subordinate, dependent body, deriving its existence from the power that created both, would be unjust, if not iniquitous. The Atlantic & Pacific corporation, within the limits of the act creating it, is as complete and independent as the territory of New Mexico under its organic act. Both are creatures emanating from the same source, and it can not be that the latter can impair the rights of the former.

In conclusion, it must be recognized that it is incumbent upon the court to be controlled by the manifest purpose of congress in conferring the franchise upon the Atlantic & Pacific Railroad Company, and as it is palpable that the intention was to contribute substantial aid, promotive of the construction of a railroad by such company, we are constrained to the conclusion that the exemption accorded must be con-

strued to include the fixtures essential to the establishment and operation of the road. The rails and ties are not more a part of the realty exempt than are the structures attached as station houses, etc., and the one is not more indispensable to the completion of the road than are the others to its utilization for the accommodation of the government. We are, therefore, of the opinion that the right of way, including roadbed, ties and rails, station buildings, workshops, depots, machine shops, etc., is not liable to taxation in the county of Bernalillo, territory of New Mexico, and the decree of the lower court is accordingly reversed.

Laughlin and Hamilton, JJ., concur.

Bantz, J. (dissenting).—I can not agree with my associates in the conclusion reached in this case. The inquiry is not as to what has been granted, but is as to what has been exempted from taxation. The grant is the right of way, including necessary grounds for station houses, shops, depots, etc. It is not material whether that grant conveyed the ownership of the soil, or only an easement. It is not everything which the grantee erected thereon or affixed thereto which is exempt, but the thing exempt is the right of way. While it may be that this exemption is broad enough to extend beyond the mere ownership or use of the soil, and may cover such improvements as the roadbed, ties, rails, culverts, and bridges, which are affixed to the right of way, and necessary to the use of it as such,—a proposition by no means clear—I am of the opinion that the exemption does not cover other improvements not essential to the use of the right of way, however convenient and necessary such improvements may be to the orderly and economical conduct of the company's business. Nor do I believe that such exemption extends to the additional grounds for station houses, depots, workshops, etc., or to such

improvements thereon. Portland S. & P. R. Co. v. Saco, 60 Me. 196; People v. Commissioners of Taxes, 82 N. Y. 459. If the exemption of a right of way can cover station houses, workshops, and depots, there is nothing to prevent a like exempting from extending to dwelling houses for lodging employees, or hotels for entertaining patrons, when erected on the right of way. If the exemption extends so far, it must comprehend something more than the right of way, and something by implication, and liberal implication at that. Some stress has been laid upon the point that the additional grounds for station houses, shops, etc., are a part of the right of way. But in my opinion this is not well founded. The act does not make the additional grounds a part of the right of way, but the act grants the right, "including" all necessary ground for station houses, etc. Grounds additional to the right of way are included in the grant, but, when we look into the clause exempting from taxation, we find it does not extend to all the property granted, but only, and in terms, to the "right of way." It has been settled by a long line of decisions, from U. S. v. Arredondo, 8 Pet. 738, and the Charles River Bridge Case, 14 Pet. 420, that grants from the sovereign are to be construed strictly against the grantee, who takes nothing by implication, or which is not manifestly intended by the clear terms of the grant; and this rule applies as well in favor of third persons as it does in favor of the power making the grant. This rule is applied for a stronger reason, and with greater strictness, when the grant involves a surrender of one of the great powers essential to government, like that of taxation. U. S. v. Denver & R. G. R'y Co., 150 U. S. 1. In a recent case the supreme court of the United States say: "The taxing power is essential to the existence of government, and can not be held to have been relinquished in any instance unless the deliberate pur-

pose of the state to that effect clearly appears. The
surrender of a power so vital can not be left to infer-
ence or conceded, in the presence of doubt; and, when
the language used admits of reasonable contention,
the conclusion is inevitable in favor of the reserva-
tion of the power." Railroad Co. v. Alsbrook, 146 U.
S. 279. It does not matter whether the grant which is
to operate as a relinquishment of the power of taxation
is one made by a state legislature, or by congress; its
terms are subject to the same rule of interpretation.
And, unless congress has exempted this property
from taxation, the territorial legislature has the same
power to tax it which it has to tax like property of
other owners. Reading the act creating this exemp-
tion in the light of established judicial decisions, I am
of the opinion that the exemption does not extend to
the additional grounds for station houses, depots,
shops, etc., nor to improvements thereon, nor to tele-
graph lines and poles on such right of way.