## SOUTHERN PAC. R. CO. v. AMBLER GRAIN & MILLING CO.

### No. Q–46–C.

District Court, S. D. California, Central Division.

March 18, 1932.

Frank Thunen, of San Francisco, Cal., for plaintiff.

Charles H. Brock, Lawrence L. Otis, and Arch. H. Vernon, all of Los Angeles, Cal., for defendant.

COSGRAVE, District Judge.

Action brought by plaintiff, Southern Pacific Railroad Company, against defendant, Ambler Grain & Milling Company, to remove a cloud on plaintiff's title to a strip of land in·Los Angeles county, claimed by plaintiff to be part of the 200-foot right of way granted to it by Act of Congress approved March 3, 1871 (16 Stat. 573). The disputed tract is 50 feet in width, lies 50 feet distant from the center line of plaintiff's main track, and is part of the southeast ¼ of section 12, township 1 south, range 12 west, San Bernardino base and meridian. Jurisdiction exists because the question at issue involves the construction of the United States statutes.

From the agreed statement of facts it appears that plaintiff is the owner of the right of way above described. The township containing the quarter section, in which the disputed tract is located, was surveyed in 1869 or earlier. The township map approved by the surveyor general on January 18, 1870, was filed in the United States Land Office at Los Angeles on February 11, 1870. The southeast ¼ of section 12, which contains the disputed tract, was entered as a homestead by one William M. Tileston, defendant's predecessor in interest, by entry.filed August 5, 1870. The entryman built a house upon the land and cultivated the greater part of it, residing there until May 6, 1871. He then commuted his homestead entry under the Act of May 20, 1862 (12 Stat. 392), paid in full for the land, receiving a receipt and register's certificate, and on November 10, 1874, received a patent for the entire quarter section. The railroad was constructed prior to April 11, 1874, and the map showing the definite line of constructed road was filed in the Department of Interior May 11, 1874, and shows the road constructed adjacent to the land involved in March, 1873.

On October 30, 1873, certain persons claiming as successors in interest of the entryman executed a quitclaim deed conveying to the plaintiff a strip of land 100 feet in width lying 50 feet on each side of the center line of the railroad. This conveyance did not include any part of the land in controversy which as shown is a part of the 50 feet lying immediately adjoining.the land so conveyed· and within 100 feet of the center of the track. Defendant is the successor in interest to William M. Tileston and has located an industrial plant partly on a strip of the land in dispute. This is served by a spur track constructed and operated by plaintiff, and in the agreement relating to the spur track

plaintiff sought to have defendant acknowledge title of the railroad to the land in question which defendant refused to do. The parties, by their stipulation, admit that defendant is the owner of the disputed tract as successor in interest to William M. Tileston unless title is vested in the plaintiff by virtue of the act of Congress referred to.

It appears therefore that defendant's predecessor in interest went into possession of the land under a valid homestead entry on August 5, 1870. At that time the land was part of the public domain and open to entry. He continued in possession and received a patent on November 10, 1874. On March 3, 1871, the act of Congress was passed which the plaintiff claims vested in it a present title to the land as part of its right of way despite the homestead entry.

Plaintiff's rights under the grant of Congress seem plainly defined. The Act of March 3, 1871 (16 Stat. 573), incorporating the Texas Pacific Railroad Company through John C. Fremont and his associates, and in Section 23 of the act authorizing the construction of the line here involved by this plaintiff in California, and by which the right of way was granted to plaintiff, adopts by reference the terms of the previous Act of July 27, 1866 (14 Stat. 292). This in express terms declares that "the right of way through the public lands be, and the same is hereby, granted * * * for the construction of a railroad * * * proposed." The right of way is created "to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain." The language of the act imports a grant in praesenti, and has been so construed. St. Joseph & D. C. R. Co. v. Baldwin, 103 U. S. 409, 26 L. Ed. 578.

Plaintiff urges that title to the land was vested in the federal government on March 3, 1871. That the entryman Tileston had merely a claim arising from his homestead entry superior only to other possible prior claimants under the general public land laws. That there was no restriction on the power of Congress to grant the land for a public enterprise, a necessary and convenient means for the development of the country. That at that time no method existed by which the right of way could have been purchased or condemned as against the entryman.

Defendant's position is that the Act of March 3, 1871, did not grant a right of way over land covered by valid homestead entry. That, as expressed by the terms of the grant, it was restricted to public land, and that a

valid homestead entry segregated the land from the public domain and it no longer possessed the character described in the act of Congress. That the title obtained by the issuance of the patent to Tileston related back to the homestead entry.

It seems to me that the question is to be determined by a consideration of what is meant by public land and public domain. Clearly the act of Congress covers only such lands as were at the effective date, that is March 3, 1871, part of the public domain. Admittedly the homestead entry had been made about six months prior to that time and the entryman was then in actual possession of the land. If such acts had the effect of withdrawing the land from public domain and of depriving it of its character as such, the grant arising by the act of Congress could not be held to have included it.

The land at the time the act took effect, not being a part of the public domain, clearly could not have been included in the grant, the same being expressly restricted by the language of the act of Congress to land of that character.

Plaintiff urges that it was the intention of Congress in making the grant to disregard all entries that would to any extent interfere with the enjoyment of the right of way, and cites St. Joseph & D. C. R. Co. v. Baldwin, supra, in support of this argument. The effective date of the grant discussed in St. Joseph & D. C. R. Co. v. Baldwin, supra, was July 3, 1866, at which time the land claimed by Baldwin was vacant and unoccupied and therefore available for the purposes of the grant to the railroad company. Baldwin acquired whatever rights he possessed in 1869, and the contention of the railroad company that he took the land subject to the right of way was clearly justified and was sustained by the court. Plaintiff urges that, because a distinction is drawn in St. Joseph & D. C. R. Co. v. Baldwin, supra, between the grant of the right of way and a grant of land in aid of the construction of the road, or the bonus grant, it follows that a different rule is to be applied and that private entries, while permitted on the bonus lands, are not recognized on the right of way. The act in that case recognized locations made upon the bonus land as does the act under consideration here. 14 U. S. Stat. 292, § 3. It can readily be seen that locations made after the grant of the right of way upon the bonus lands or lands granted in aid of the construction of the road and locations upon the right of way might properly be distinguished, but such dis-

tinction could reasonably be made only to the extent of recognizing entries on the bonus lands made after the grant to the railroad and not recognizing those made on the right of way after such grant. If, after the grant had been made, but before the line was definitely located by the filing of the map with the Secretary of the Interior, settlers were at liberty to make locations on the right of way, in the language of the court in the case cited: "Serious obstacles would be often imposed to the progress of the road." St. Joseph & D. C. R. Co. v. Baldwin, supra, 103 U. S. page 430, 26 L. Ed. 578. Baldwin's entry, though on the right of way, was made after the grant by Congress to the railroad and not before as in the case at bar. The case therefore is clearly not authority.

Plaintiff urges that, if the grant of March 3, 1871, did not operate upon the portions of the right of way held under public entry, there was no way by which such rights of way could be acquired, and the purpose of the grant might fail. Even if this consequence were to follow, I think it would furnish no argument to sustain the destruction of the right created by a lawful entry of the public land under the homestead laws, but I think such result suggested by plaintiff does not follow. Section 7 of the act in question (14 Stat. 292, 296) empowers the railroad company to enter upon, purchase, and take any lands that may be necessary for the construction of the road, and, in default of agreement between the railroad company and the owner of the land, a complete method of adjustment is provided. No authority has been called to my attention where this section is construed, but I see no reason why it cannot be held to apply to a homestead entry as well as to land in fee.

In Barnes et al. v. Southern Pacific Co. (Mulvihill et al. v. Southern Pacific Co.) (C. C. A.) 16 F.(2d) 100, cited in support of plaintiff's position, decided by the Ninth Circuit, the claimants asserted no claim as existing prior to the act of Congress under which the right of way was acquired. They claimed an abandonment on the part of the railroad. The Circuit Court of Appeals, in its review of the case, says: "The essential question is whether the railroad company, which has always operated its line, could divest itself of its title to the several small strips included within the right of way acquired under the grant of Congress. The answer must be that it could not." 16 F.(2d) 102.

It is a little uncertain as to when the predecessors in interest of the plaintiffs in that case actually occupied the land in question, but whatever the date it was at a time when the land was unsurveyed, because the township plat was not filed in the land office until long after the passage of the act of Congress. No contention was made that, as is admitted in the case at bar, it occurred before the grant to the railroad company. Barnes v. Southern Pacific Co. (C. C. A.) 300 F. 481.

Thrift v. Delaney, 69 Cal. 188, 10 P. 475, is cited by plaintiff in support of the view that when Tileston commuted his homestead entry he changed his tenure and in effect abandoned his homestead right. Different views are expressed on this question in the adjudicated cases, but conceding this to be true it does not change the situation so far as the title of plaintiff is concerned. If, on the effective date of the Act of March 3, 1871, the land was not public land, title did not vest in plaintiff and any abandonment of the homestead thereafter would merely revest the title in the United States.

In Sioux City & Iowa Falls Town Lot & Land Co. v. Thomas L. Griffey et al., 143 U. S. 32, 12 S. Ct. 362, 364, 36 L. Ed. 64, 66, the court says: "Inasmuch as Griffey's pre-emption right had attached to this land prior to such time, it did not pass to the railroad company under the grant; and it was a matter of no moment to the company what thereafter became of the title. * * * [Quoting from Kansas Pacific R. R. Co. v. Dunmeyer, 113 U. S. 629, 5 S. Ct. 566, 28 L. Ed. 1122:] 'The right of the homestead having attached to the land, it was excepted out of the grant as much as if in a deed it had been excluded from the conveyance by metes and bounds.'"

Union Pacific R. Co. v. Harris, 215 U. S. 386, 30 S. Ct. 138, 54 L. Ed. 246, appears from its facts to be more nearly in point. There Blou settled on the land April 22, 1861, and shortly thereafter filed a pre-emption claim. On September 5, 1865, he changed his pre-emption entry to one under the Homestead Act of May 20, 1862, continued in occupation, made his final proof on December 8, 1870, and received a patent on March 15, 1872. By the Act of July 1, 1862, the railroad company was granted a right of way through the public lands of the United States. After some changes in its general route, under the Act of July 3, 1866 (14 Stat. 79), the route was changed so that the road passed through the land that Blou was then

seeking to acquire under the Homestead Law. The railroad company then purchased a right of way from Blou, and the land in controversy was a strip adjoining that purchased but in the same quarter section. The court says: "The grant of the right of way was 'through the public lands.' What is meant by 'public lands' is well settled. As stated in Newhall v. Sanger, 92 U. S. 761, 763, 23 L. Ed. 769, 770: 'The words "public lands" are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws.'" Id., 215 U. S. 386, 30 S. Ct. 138, 139, 54 L. Ed. 246, 248.

The court holds that the act of Congress under which the railroad took its title was that of July 3, 1866, and sustained the judgment of the state court of Kansas where the case was tried, holding that the act of Congress did not give the railroad company title as against the existing homestead entryman. Union Pacific R. Co. v. Harris, 215 U. S. 386, 30 S. Ct. 138, 54 L. Ed. 246.

In Bardon v. Northern Pacific R. Co., 145 U. S. 535, 12 S. Ct. 856, 859, 36 L. Ed. 806, 811, Judge Field, after having held a different view, concedes that the rule that, "in the absence of any express provision indicating otherwise, a grant of public lands only applies to lands which are at the time free from existing claims, is better and safer, both to the government and to private parties, than the rule which would pass the property subject to the liens and claims of others."

In Hastings & Dakota R. Co. v. Whitney, 132 U. S. 357, 10 S. Ct. 112, 114, 33 L. Ed. 363, 365, the court says: "The doctrine first announced in Wilcox v. Jackson, 38 U. S. (13 Pet.) 498, 10 L. Ed. 264, that a tract lawfully appropriated to any purpose becomes thereafter severed from the mass of public lands, and that no subsequent law or proclamation will be construed to embrace it, or to operate upon it, although no exception be made of it, has been reaffirmed and applied by this court in such a great number and variety of cases that it may now be regarded as one of the fundamental principles underlying the land system of this country."

The agreed statement submitted recites that another portion of land 100 feet in width, upon which the road was located and which was part of the quarter section entered by Tileston, was conveyed to plaintiff shortly after the construction of the road. From this it might be inferred, but not necessarily so, that the railroad company recognized the title of the patentee of the land and took a position contrary to that held by it in the present action. Various reasons, however, might have induced the purchase, if a purchase it was. Such action on the part of plaintiff would not affect its title to the remainder of the land nor estop the plaintiff in maintaining the present action.

Under any circumstances I am not prepared to assent to a position that the interest created by a location in perfect good faith upon the public lands of the United States, open for settlement, regularly made under the existing statutes and regulations and which is a valuable property right, can be destroyed by an act of Congress thereafter passed. The effect would be to deprive the homesteader of his property without compensation and cannot be justified on any consideration of public policy or otherwise.

Since it is conceded that, at the time the act of Congress was passed, the predecessor in interest of the defendant was in possession of the land under a valid and regular homestead entry thereon, it necessarily follows that the land had ceased to become a part of the public domain and was therefore not included in the grant of the right of way to the Southern Pacific Railroad Company.

It is unnecessary to pass upon the issues of estoppel and laches suggested by defendant.

Judgment should therefore follow for defendant, and it is so ordered.

Defendant will prepare and present findings of fact.

Exception to plaintiff.