OREGON SHORT LINE RAILROAD COMPANY, a
Corporation, Appellant, v. DAVID M. FISHER,
MARY L. LAYTON DONNELLY and MYRTLE
E. LAYTON, Respondents.

No. 1430.   (72 Pac. 931.)

Public Lands: Grant to Railroads: Lands Included: Land
Previously Entered.
A grant to a railroad company by act of Congress of a right of way
over public lands does not include lands which, at the time of
the grant, are subject to an existing, uncancelled homestead
entry.

(Decided June 24, 1903.)

Appeal from the Second District Court, Davis county.
—*Hon. H. H. Rolapp,* Judge.

Action to quiet title to a certain parcel of land described in the statement of facts. From a judgment in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*P. L. Williams, Esq.,* and *Geo. H. Smith, Esq.,* for appellant.

*Valentine Gideon, Esq.,* and *D. O. Willey, Jr., Esq.,* for respondents.

### STATEMENT OF FACTS.

This is an action by the plaintiff and appellant alleging that it is the owner and in the possession of the small parcel of land described in the complaint, and that it and its predecessors in interest have, ever since the year 1870, been the owners and entitled to the possession of the same as a part of the right of way of its railroad; that the defendants claim to have some interest in or right to the premises described, which right the plaintiff denies, and prays that it may be decreed to be the owner in the possession, and entitled to the possession, of the said parcel of land, and that its title thereto be confirmed and quieted. The defendants by their answer admit that the plaintiff is a corporation as alleged, but deny that it is the owner or in possession, or that its predecessors in interest have at any time been the owners, or in or entitled to the possession, of said tract of land, and deny each and every allegation of the complaint not specifically admitted or denied, and plead the statute of limitations.

The case was submitted on the following stipulation of the parties: "That the plaintiff is a corporation, owning and operating a railroad over and across the east half of the northeast quarter and the east half of the northwest quarter of the northeast quarter of section 2, township 4 north, range 2 west, Davis county, Utah; that the said plaintiff has succeeded to all the interests of the Utah Central Railroad Company, a corporation of the Territory of Utah, incorporated March 15, 1869, and which was the grantee named in the act of Congress approved December 15, 1870, granting the right of way to the said Utah Central Railroad Company through the public lands of the United States; that the terms and conditions of the said act, it is agreed, were duly accepted by the said grantee; that in 1891 the

plaintiff company, and its predecessors in interest, con-. structed a fence inclosing its railroad, where the same passes across the said quarter section of land, placing the said fence fifty feet from the center of the said railroad track, and has maintained the same in that position since; that in 1900 the plaintiff entered against the will, claim of interest, and protests of the defendants, upon the particular parcel of land described in the complaint, and constructed thereon a building; that the whole of the land described in the complaint and involved in this controversy is within two hundred feet of the center line of said railroad; that said railroad, where it passes through said quarter section, was constructed in 1870 and 1871, and ever since has been and is still maintained and operated as a railroad and common carrier of passengers and freight, by the plaintiff and its predecessors in interest; that the said railroad company and its predecessors in interest have annually since 1870 paid all the taxes levied and assessed upon its said road and right of way; that the said east half of the northeast quarter and the east half of the northwest quarter of the northeast quarter of said section was patented to Hyrum Layton, by patent bearing date June 1, 1882; that the right of way of the railroad company was not excepted from the operation of the patent; that said patent was granted in pursuance of a preemption claim and filing made by said Layton upon said land on October 10, 1877, and final proof and payment made therefor at the land office on December 4, 1880; that the said defendants are the successors in interest and have succeeded by chain of mesne conveyances to all the right, title, and interest granted to the said Layton by virtue of the said patent; that the defendants and their predecessors in interest have been in the continuous occupation of said parcel of land described in the complaint ever since the filing of said pre-emption claim by Layton in 1877, and during all the time since have used and occupied the same for farming purposes, and until the same was entered upon and the said building

constructed thereon by the plaintiff in 1900; that during the time the said defendants and their predecessors were so in possession of the said land they claimed to own the same under and by virtue of the said patent and mesne conveyances, and claimed to hold the same thereunder adversely to the said plaintiff and its predecessors in interest during the whole of said period, and used the same for the purposes of agriculture and farming and during the said period, to and including the year 1900, paid all the taxes levied or assessed upon said premises against them or either of them; that under the provisions of the homestead law of May 20, 1862, and on the 4th day of May, 1869, Joseph F. Smith, a married man and citizen of the United States, and of the then Territory of Utah, made application to the register of the land office, Salt Lake City, Utah Territory, by filing the necessary application and affidavits and the payment of the legal fees to enter as a homestead the said northeast quarter of section 2, township 4 north, range 2 west, which includes the lands described in the plaintiff's complaint; that the said register thereupon permitted the said Smith to enter the said land under the provisions of the said act, and issued to said Smith a receipt for the fees paid by him; that the said entry remained in force and was not set aside by the United States until the 15th day of May, 1878, when said Smith relinquished his rights in said land, and the said register of the said land office thereupon cancelled the said entry; that on the 3d day of June, 1870, the said Smith executed and delivered to the Utah Central Railroad Company, the plaintiff's predecessor in interest, a deed conveying a right of way across the said quarter section to the extent of fifty feet in width on each side of the center line of said railroad (a copy of said deed being set out in said stipulation); that said deed was accepted by said railroad company and filed for record in the county recorder's office, Davis county, Utah; that the said Smith did not, at any time during the time of his homestead application remained in force, reside upon or have his residence upon said

premises, but that during that time he was a resident of Salt Lake City; that said defendants rely upon the said patent and mesne conveyances to them, and also upon the said possession during said time of more than twenty years next preceding the 1st day of August, 1900, and upon any and all other rights or lawful defenses to which the facts in the case entitle them.''

The action was dismissed, at plaintiff's costs.

BASKIN, C. J., after reciting the foregoing stipulation, said:

The grant to the Utah Central Railroad Company was the right of way through the public lands, without any reservation of homestead or pre-emption rights. Appellant's counsel contend that, in the absence of such reservation in the grant to the railroad company, under the stipulated facts and the Yosemite Valley Case, 15 Wall. 77, 21 L. Ed. 82, and the other decisions of the Supreme Court of the United States, to the same effect, the said railroad company acquired, and its successor in interest, the appellant, now is entitled to, a right of way through the premises in controversy, notwithstanding it was covered, at the date of said grant, by a homestead entry, which was not cancelled until May 15, 1878.

In the case of Bardon v. Northern Pacific Railroad Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806, it appears that by the act of Congress of July 2, 1864, 13 Stat. 365, c. 217, the railroad company was granted a number of odd-numbered sections of public land on each side of the railroad line which the company should adopt; that the grant in terms excepted pre-emption and homestead claims and rights; and that on September 12, 1855, James S. Robinson, Jr., settled upon a portion of one of the odd sections on the side of the railroad line. and on the 21st of that month filed his declaration of settlement under the pre-emption law with the register and receiver of the proper land office. His heirs, after his death, made payment for the land on July 30, 1857, and a certificate of purchase was issued to them, and on

August 5, 1865, the pre-emption entry was cancelled. The railroad company claimed, under said grant, the land so entered; but its claim was rejected by the court, and its bill dismissed. In the opinion the court said: "The grant is of alternate sections of public land, and by public land, as it has been long settled, is meant such land as is open to sale or other disposition under general laws. All land to which any claim or rights of others have attached does not fall within the designation of 'public land.' The statute also says that whenever, prior to the definite location of the route of the road, and, of course, prior to the grant made, any of the lands which would otherwise fall within it have been granted, sold, reserved, occupied by homestead settlers, or pre-empted or otherwise disposed of, other lands are to be selected in lieu thereof under the direction of the Secretary of the Interior. There would, therefore, be no question that the pre-emption entry by the heirs of Robinson, the payment of the sums due to the Government having been made, as the law allowed, by them after his death, took the land from the operation of the subsequent grant to the Northern Pacific Railroad Company, if the pre-emption entry had not been subsequently cancelled. But such cancellation had not been made when the act of Congress granting land to the Northern Pacific Railroad Company was passed. It was made more than a year afterwards. As the land pre-empted then stood on the records of the land department, it was severed from the mass of the public lands, and the subsequent cancellation of the pre-emption entry did not restore it to the public domain, so as to bring it under the operation of previous legislation, which applied at the time to land then public. The cancellation only brought it within the category of public land in reference to future legislation. This, as we think, has long been the settled doctrine of this court."

From this statement, and from the other cases cited in the decision, it is clear that "all land to which any claims or rights of others have attached does not fall

within the designation of 'public land,' " and therefore does not pass by a subsequent grant to a railroad company.

In the case of Hastings, etc., Railroad Company v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363, a homestead entry was involved, and the court said: "Under the homestead law three things are needed to be done in order to constitute an entry on public lands: First, the applicant must make an affidavit setting forth the facts which entitle him to make such an entry; second, he must make a formal application; and, third, he must make payment of the money required. When these three requisites are complied with, and the certificate of entry is executed and delivered to him, the entry is made—the land is entered. If either one of these integral parts of an entry is defective—that is, if the affidavit is insufficient in its showing, or if the application itself is informal, or if the payment is not made in actual cash—the register and receiver are justified in rejecting the application. But if, notwithstanding these defects, the application is allowed by the land officers, and a certificate of entry is delivered to the applicant, and the entry is made of record, such entry may be afterwards cancelled on account of these defects by the commissioner, or on appeal by the Secretary of the Interior, or, as is often the practice, the entry may be suspended, a hearing ordered, and the party notified to show by supplemental proof a full compliance with the requirements of the department; and on failure to do so the entry may then be cancelled. But these defects, whether they be of form or substance, by no means render the entry absolutely a nullity. So long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and therefore precludes it from subsequent grants."

See, also, Kansas Pac. Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; Whitney v.

Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906; Tarpey v. Madsen, 178 U. S. 215, 20 Sup. Ct. 849, 44 L. Ed. 1042.

It appears from the stipulation of facts in the case at bar that all of the steps necessary to make a homestead entry, mentioned in the foregoing case quoted from, were taken by the said Joseph F. Smith, and that thereupon, before the grant to the railroad company, he was permitted, by the register of the proper land office, to enter the land, and that said entry was not cancelled until long after the grant to the railroad. In view of the foregoing decisions, and the cases therein cited, we are of the opinion that said entry segregated the premises in dispute from the public land, and that the railroad company did not, by the grant to it, acquire the right of way over said premises.

The judgment is affirmed, with costs.

BARTCH and McCARTY, JJ., concur.