No. 23,418.

THE UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. MARY WEAVER et al., *Appellees*.

No. 23,419.

THE UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. HELEN M. NEAL et al., *Appellees*.

No. 23,420.

THE UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. CHARLES A. BROOM et al., *Appellees*.

SYLLABUS BY THE COURT.

1. PUBLIC LANDS—*Railroad Land Grants—Width of Right of Way—Construction of Land Grants*. Upon the one question in which these cases differ from the six preceding ones, it is *held,* following *Stuart v. Union Pacific R. R. Co.,* 227 U. S. 342, that under the act of congress of July 1, 1862 (12 U. S. Stat., ch. 120, p. 489), the Union Pacific Railroad Company and its successors in interest acquired a present grant of the right of way through public lands, and that within the meaning of the right of way section of the act all land was public where the title remained in the government and it had the ultimate right to dispose of it.

2. SAME. The defendants' titles rest upon patents resulting from entries on the lands subsequent to July 2, 1864. Entries had been made upon the lands prior to July 2, 1864, but nothing resulted therefrom and the entries were canceled. *Held,* that the defendants cannot tack to their claims any rights by virtue of the canceled entries and that the prior entries did not remove the lands from the grant of the right of way by the act of July 1, 1862.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed February 11, 1922. Reversed.

*R. W. Blair, T. M. Lillard, O. B. Eidson,* all of Topeka, and *T. L. Bond,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich, LaRue Royce,* and *Z. C. Millikin,* all of Salina, for the appellees.

The opinion of the court was delivered by

PORTER, J.: As in the six preceding cases (*ante,* p. 368), these actions were brought by the Union Pacific Railroad Company to recover portions of its right of way through Saline county, which

defendants claim to own. The defendants prevailed in the court below and the railroad company is the appellant. In one other respect the cases differ. They involve a question not presented by the preceding cases, and as this question is common to the three, they have been consolidated. In other respects they are controlled by the preceding decision.

It will be sufficient to state the findings of the trial court upon the facts which present the one question.

The present owners purchased the lands a considerable time after the construction of the railroad, and they, or those under whom they claim, have occupied the lands ever since the date of the entry under which the patents issued.

In the Weaver case a homestead entry on the land was made in October, 1863, prior to the effective date of the grant to the railroad company, which was July 2, 1864. The entry, however, was canceled and another entry, upon which the patent finally issued, was made on October 12, 1864.

In the Neal case a declaratory statement was filed May 13, 1861, and a homestead entry on November 4, 1863. The homestead entry was canceled April 28, 1865. A homestead entry was subsequently made by John E. Woodward on September 29, 1871, and a patent thereon was issued to him June 30, 1880.

In the Broom case a declaratory statement was filed May 13, 1861, and a homestead entry by Nathaniel E. Talcott November 4, 1863. These were prior to July 2, 1864, the date when the grant to the railroad company became effective, but nothing resulted from the entries. Subsequently, on September 29, 1871, John E. Woodward made a homestead entry resulting in a patent issued to him on June 30, 1880.

In *Railroad Co. v. Davenport*, 102 Kan. 513, 170 Pac. 993, it was decided:

"The Union Pacific Railroad Company, by the grant to its predecessors in interest under the act of Congress of July 1, 1862 (12 U. S. Stat. at Large, ch. 120, p. 489) and the amendatory act of July 2, 1864 (13 U. S. Stat. at Large, ch. 216, p. 356) became the owner in fee of a right of way two hundred feet from the center of the track, which right is superior to claims initiated after the act of 1864, and is not defeated by adverse possession. The grant is of the land itself and not a mere right of passage over it." (Syl.)

The opinion cites the case of *Stuart v. Union Pacific R. R. Co.*, 227 U. S. 342, where it was held that under the acts of 1862 and 1864 the Kansas Pacific Railway Company had authority to

build west of the one hundredth meridian to Denver and was entitled to a right of way two hundred feet from the center of the track, and that right is superior to claims initiated after the act of 1864, even if prior to the construction of the road; and this right is not defeated by adverse possession.

· It may be said that the claims which resulted in the patents upon which defendants' title rests did not originate until after July 2, 1864, when the grant became effective. We do not believe the defendants can bridge .the gap between the date of the cancellation of the first entries by tacking to their own claims· under the patents any rights acquired by the prior entries. None of the patents was issued because of anything done by former entrymen or under a prior and canceled entry. In the interval between the cancellation of a prior entry and the filing of the new, the land undoubtedly became public land open to settlement. Otherwise a new filing thereon would have been futile. The whole effect of the prior entries passed with their cancellation.

The main contention, however, of the defendants and the one upon which it appears to be conceded the trial court based the judgments, is that the acts of congress of 1862 and 1864 gave only a right of way over land which was then public; that the land then occupied by settlers was not public and therefore the grant of the right of way could never affect those lands. It is true that in *Tarpey v. Madsen,* 178 U. S. 215, it was held that when an entry is duly made the land described therein ceases to be a part of the public domain. In the opinion it was held that the effect of the former entry was to withdraw the land " 'from subsequent homestead entry, preëmption, settlement, sale or grant until the original entry be canceled or declared forfeited; in which case the land reverts to the government as a part of the public domain and becomes again subject to entry under the land laws.' " (p. 225.)

The railroad company concedes that under the land-grant section a filing or entry previous to the date of the definite fixing of the right of way absolutely removed the land from the grant for all time, but insists that under the right-of-way section of the act of 1862 it got a present right of way across the public lands and that within the meaning of that section all land was public where the title remained in the government and it had the ultimate right to dispose of it. The company made the same contention in *Railroad Co. v. Harris,* 76 Kan. 255, 91 Pac. 68, which was a right-of-way

case, and this court held that land owned by the United States, but lawfully occupied by a settler who had filed his declaratory statement in 1861, under the preëmption law, was not a part of the public lands within the meaning of section 2 of the act of congress of July 1, 1862, which gave to certain railroad companies a right of way through the public lands, and that no right with respect to such tract was thereby granted.

The facts in that case were somewhat unusual. Long prior to the railroad grant of 1862 and on April 22, 1861, the land was settled upon and a declaratory statement filed, claiming under the preëmption law. The settler remained continuously in possession, but on September 5, 1865, he changed his preëmption to a homestead entry, which the law permitted him to do. He subsequently proved up and received a patent in 1872. There was no moment of time from the first settlement until the patent when he was not in possession of the land, nor when it could be said that the land became a part of the public domain. The decision was rendered in this court in 1907, taken on a writ of error to the supreme court of the United States, and there affirmed (*Union Pacific R. R. Co. v. Harris*, 215 U. S. 386), the opinion of affirmance making no distinction between the effect of a grant of a right of way and the grant of alternate sections of land. Later, however, in *Stuart v. Union Pacific R. R. Co.*, supra (1912), it was held:

"All persons acquiring public lands after the passage of the Pacific Railroad Acts took the same subject to the right of way conferred by them on the proposed roads. (*Railroad Co. v. Baldwin*, 103 U. S. 426.)" (Headnote.)

It was further held that—

"Under the acts of 1862 and 1864 the Kansas Pacific Railway Company had authority to build west of the one hundredth meridian to Denver and was entitled to a right of way two hundred feet from the center of the track, and that right is superior to claims initiated after the act of 1864, even if prior to the construction of the road; and this right is not defeated by adverse possession." (Headnote.)

The opinion refers to the Harris case in the following language:

"It may be said that *Union Pacific Railroad Co. v. Harris*, 215 U. S. 386, puts a different construction upon the acts of 1862 and 1864 from that received in the cases cited, and, it must be admitted, there is language in the opinion which may be so understood, but that it was not so intended is made clear by *Kindred v. Union Pacific Railroad Co.*, 225 U. S. 582, where it is again declared that under congressional authority the route of the road was changed so that its connection with the Union Pacific Railroad would be at a point farther west than was originally intended." (p. 349.)

The reference here to the Harris case (215 U. S. 386) is doubtless to a statement in that opinion that the effect of the statute of 1866 was involved (which was manifestly erroneous).

The court then reasserts the doctrine of former cases, and rejects the contention of the petitioners that the acts of 1862 and 1864 should not be considered and construed as one act. The opinion stresses the difference between the grant of the right of way and the grant of alternate odd-numbered sections; and it is said:

"Of such a difference between an unconditional grant of a right of way and a qualified grant of alternate odd numbered sections this court said, in *Railroad Co. v. Baldwin,* 103 U. S. 426, 430: 'The uncertainty as to the ultimate location of the line of the road is recognized throughout the act, and where any qualification is intended in the operation of the grant of lands, from this circumstance, it is designated. Had a similar qualification upon the absolute grant of the right of way been intended, it can hardly be doubted that it would have been expressed. The fact that none is expressed is conclusive that none exists.'" (p. 353.)

The appellees cite the case of *Oregon Short Line R. R. Co. v. Fisher et al.,* 26 Utah, 179, which, so far as we have been able to discover, is the only decision which directly supports their contention. The case involved the effect of an act of congress of March 15, 1869, granting to the Utah Central Railroad Company a right of way over the public lands. The opinion of the Utah court cites only cases involving lands acquired under the land-grant section of the acts of 1862 and 1864, to the Kansas Pacific Railroad Company. No appeal was taken from the judgment against the railroad company in that case. It is sufficient to say that, in view of the more recent decisions to which we have referred, the case cannot be followed as a precedent.

The judgments will be reversed and the causes remanded with directions to enter judgment for the plaintiff.