## SPOKANE FALLS & N. RY. Co. v. ZIEGLER.

### (Circuit Court of Appeals, Ninth Circuit. April 12, 1894.)

### No. 81.

1. PUBLIC LANDS—RIGHT OF WAY OF RAILROADS.

   Act Cong. March 3, 1875, which provides that "the right of way through the public lands of the United States is hereby granted" to any duly-organized railway company which shall perform the conditions prescribed by the act, does not entitle such company to a right of way over lands which are in the possession of a qualified pre-emptor who has made final proof, tendered the purchase money, and demanded his final receipt.

2. EMINENT DOMAIN—COMPENSATION.

   Under the laws of the territory of Washington which provide that where land is taken for the right of way of a railroad compensation shall be made to the owner "irrespective of any increased value thereof by reason of the proposed improvement," any question as to the value of the land before and after the road was built is irrelevant.

In Error to the Circuit Court of the United States for the District of Washington, Eastern Division.

This was an action by Ziegler against the Spokane Falls & Northern Railway Company, in which plaintiff had judgment and defendant brings error.

Jay H. Adams and McBride & Allen, for plaintiff in error.

George Turner, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

McKENNA, Circuit Judge. This case comes on writ of error from the circuit court, for the district of Washington, eastern division. Defendant in error recovered judgment, after a verdict by jury, against plaintiff in error, for damages for an appropriation of a strip of land, part of the E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$, section 4, township 25, range 43 E., W. M. The defendant in error was, on the 1st day of May, 1889, in possession of said land as a pre-emptor, having the legal qualifications of such, and had made final proofs, and had tendered the purchase money, and demanded his final receipt. The money was not received, on account of a contest in the land office. The plaintiff in error, defendant in the court below, is a corporation under the laws of Washington, for the purpose of constructing and operating a railroad from the city of Spokane Falls, in a northerly direction, through the counties of Spokane and Stevens, to the Columbia river. The evidence also shows that plaintiff in error filed in the office of the secretary of the interior a copy of the articles of incorporation, and afterwards, in 1889, commenced the construction of its road, and surveyed and marked the line of its road, which line ran over the lands of the defendant in error, and, within 12 months after locating said line, filed a profile map thereof with the register of the land office of the district in which the land is situated, which map was approved by the secretary of the interior, and afterwards constructed its road; and the plaintiff in error therefore contends that under said acts, and under the act of congress ap-

proved March 3, 1875, entitled "An act granting to railroads the right of way through the public lands of the United States," it became the owner of a right of way across the land of the defendant in error, and that the circuit court erred in admitting proof of his entry of the land, and tender of payment therefor, and patent from the United States. The act of congress referred to above is as follows:

"That the right of way through the public lands of the United States is hereby granted to any railway company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proof of its organization under the same, to the extent of one hundred feet on each side of the central line of said road. Also the right to take from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad. Also ground adjacent to such right of way, for station-buildings, depots, machine-shops, side tracks, turn-outs, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road. * * * Sec. 3. That the legislature of the proper territory may provide for the manner in which private lands and possessory claims on the public lands may be condemned; and where such provision shall not have been made, such condemnation may be made in accordance with section 3 of the act entitled, 'An act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean, and to secure to the government the use of the same for postal, military, and other purposes, approved July first, eighteen hundred and sixty-two,' approved July second, eighteen hundred and sixty-four. Sec. 4. That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a profile of its road; and upon approval thereof by the secretary of the interior, the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass, shall be disposed of subject to such right of way. Provided, That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road. Sec. 5. That this act shall not apply to any lands within the limits of any military, park, or Indian reservation, or other lands especially reserved from sale."

The act did not operate as a present grant. Its words are: "That the right of way through the public lands is hereby granted to any railroad company." The opening words of section 4 of the Oregon donation act are: "That there shall be, and hereby is granted to every white settler, or occupant of the public land." In neither act is there a grantee, and the supreme court said, in construing the latter act, in Hall v. Russell, 101 U. S. 509: "There cannot be a grant unless there is a grantee, and consequently there cannot be a present grant unless there is a present grantee." And the court further said that, in all cases where a grant was given a present effect, a state, or some corporation having all of the qualifications specified in the act, had been designated as a grantee. In other words, when an immediate grant was intended, an immediate grantee, having all the requisite qualifications, was named. The act, therefore, did not give a right of way presently, but entitled any company to obtain the right of way upon performing certain condi-

tions, and its right attached upon filing a profile map of its road, as provided in section 4. It will be observed that the provision of section 4 is that, after filing the profile of the road, all lands over which the right of way shall pass shall be disposed of subject to such right of way. Lands, therefore, which had been disposed of theretofore, were exempt. The pre-exemption laws are certainly a means of disposing of the public lands, and an entry of record under them, valid on its face, is such an appropriation of the tract entered as segregates it from the public domain, and precludes it from subsequent grant. Railroad Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112; Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350. An express reservation is not necessary. Wilcox v. Jackson, 13 Pet. 498; Leavenworth, etc., R. Co. v. U. S., 92 U. S. 745. That pre-emption claims are exempted from the grant is supported by section 3 of the act. It is as follows:

"Sec. 3. That the legislature of the proper territory may provide for the manner in which private lands and possessory claims on the public lands of the United States may be condemned; and where such provision shall not have been made, such condemnation may be made in accordance with section 3 of the act entitled 'An act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean, and to secure to the government the use of the same for postal, military, and other purposes, approved July first, eighteen hundred and sixty-two,' approved July second, eighteen hundred and sixty-four."

Counsel for plaintiff in error urges that by the words "possessory claims" congress intended only to protect the improvements of a settler. The explanation is not adequate. See, also, Enoch v. Railway Co. (decided by the supreme court of Washington; opinion filed May 24, 1893) 33 Pac. 966. The cases of Railroad Co. v. Baldwin, 103 U. S. 426, and Railroad Co. v. Tevis, 41 Cal. 489, do not militate with the conclusions we have reached. In the former case the grant was a present one, and necessarily, as the court said, all persons acquiring any portion of the public lands after its date took subject to the grant. In the case of Railroad Co. v. Tevis, the plaintiff was the successor of the Central Pacific Railroad Company, who had been granted by congress a right of way over the public lands Kerr claimed as a pre-emption, and though he had settled on the land, and had improved it, he had not filed a declaratory statement when the right of way attached. The court held that he was neither the owner nor a claimant of the land within the meaning of section 3 of the act granting the right of way to the railroad, which provided a means of ascertaining damages in case the owner or claimant of the land and the railway company could not agree. The facts of the case, therefore, and the one at bar are different.

The plaintiff in error claims that the circuit court erred in sustaining an objection to the following question:

"Q. How much less, if any, was this tract of land worth that spring (1889) after the road had been constructed over it, and with the road upon it as it is now constructed, than it was worth that spring before the road was constructed, and before it was known that the road was going to be constructed over it?"

The appropriation of the land was made on the 5th day of June, 1889, while Washington was a territory, and the law of the territory then was that compensation should be made to the owner of land taken "irrespective of any increased value thereof, by reason of the proposed improvement." In support of the relevancy of the question, plaintiff in error cites Railroad Co. v. Coleman, 3 Wash. St. 234, 28 Pac. 514. This case, however, was overruled in Enoch v. Railway Co. (filed May 24, 1893) 33 Pac. 966. The circuit court, therefore, did not err in sustaining objection to the question. Judgment is affirmed.