Points Decided.

(February 27, 1908.)

ON REHEARING.

[94 Pac. 59.]

Railroad Grant—Right to Station and Depot Grounds—Filing of Profile Maps—Maps of Station Grounds—Approved of by Secretary of Interior—Notations on Plat of Local Land Office—Duty of Local Officers—Neglect of—Nature of Title—Title.

1. Under the provisions of sec. 1 of an act of Congress approved March 3, 1875 (18 U. S. Stats. at Large, p. 482, U. S. Comp. Stats. 1901, p. 1568), granting to railroads the right of way and station grounds through, over and upon the public lands of the United States, a right of way is granted to the extent of one hundred feet wide on each side of the central line of the railroad, upon a compliance with the provisions of said act; and there is also granted by the provisions of said section, ground adjacent to such right of way, not exceeding twenty acres for station buildings, etc., to the extent of one station for each ten miles of the railroad.

2. Under the provisions of sec. 4 of said act, a railroad company desiring to secure the benefits of that act must file with the register of the land office of the district where such land is located, a profile of its road, and upon approval by the Secretary of the Interior, the same shall be noted upon the plats in said office, and thereafter such lands, over which such right of way shall pass, shall be disposed of subject to such right of way. The provisions of that section have no application to the method of securing station grounds.

3. Under the rules and regulations of the Interior Department, approved January 13, 1888 (12 Land Dec. 423), it is provided that if a railroad company desires to avail itself of the provisions of that act which grants ground adjacent to the right of way for station buildings, etc., it must file for approval in each separate instance a plat showing, in connection with the public survey, the surveyed limits and areas of the ground desired; and it is also provided in such regulations that when there is received from the office of the Secretary of the Interior a copy of an approved plat of the grounds selected by the company for station purposes, etc., the local officers will mark the township plat accordingly and make the necessary notes on the tract-books, and note on the certificate of entry of any of such lands, in addition to the note concerning the right of way, that the entry is permitted subject

to the use and occupation of such railroad company for station purposes.

4. Said act of 1875 contains no requirements for the filing of maps and plats designating the station grounds selected, and all proceedings relative thereto are governed by the rules and regulations of the Interior Department.

5. Where a railroad company desires to avail itself of the benefits of said act in regard to station grounds, and does everything required by the law and the regulations of the Interior Department, its right cannot be defeated through the neglect of the local officers to make the proper notation, etc., required to be made by the rules and regulations on the plats and books of such office.

6. Where the railroad company filed in the local land office a plat properly designating its station grounds on September 12, 1888, and on the following 18th day of October, an entryman entered the government subdivision on which such station grounds were located, under the pre-emption laws, and thereafter such plats were approved by the Secretary of the Interior and returned to the local land office, and the same were lost or misplaced by such officers, and the proper notations were not made by them on their plats, the right of the railroad company cannot be defeated because of such loss or neglect of duty by the local officers.

7. The grant of the right of way and ground for station building in said act are grants *in praesenti*, differing only from absolute present grants in that the thing granted is indefinite and the name of the grantee is not known, and in order to make the grant effectual, it is necessary that there be a specific grantee and a definite location of the thing granted.

8. After a railroad corporation complies with the provisions of said act, such corporation becomes a grantee just as specifically and definitely as if its name had been written in said act.

9. When a grantee selects lands subject to said grant and in the mode prescribed by the Department of the Interior, and advises the department of such selection by filing its maps, he has done all that the law requires of him, and the grant then becomes a fixity, not only as to the grantee, but as to the thing granted.

10. Neither the law nor the regulations of the Interior Department requires the grantee to go into the courts to compel the local land officers to perform the duties imposed on them by the regulations or the statute. Their neglect of duty cannot defeat the appellant's rights.

11. It is a well-established rule of law that where an individual in the prosecution of a right does everything that the law requires him to do, and he fails to attain his right because of the misconduct or neglect of a public officer, the law will protect him.

Points Decided.

12. The rule that the one most at fault must suffer, when two innocent persons are involved, has no application in this case, as the railroad company is not at fault in any degree.

13. It is a well-established rule as to the recordation of instruments affecting real property, that when a grantee has duly deposited for record a valid instrument at the proper time, in the proper office, and with the proper officer, he has performed his whole duty, and subsequent purchasers will be charged with constructive notice, notwithstanding the officer does not spread the instrument on the records or fails to record it at all.

14. Under the provisions of said act of March 3, 1875, the nature of the grant made as to the right of way and station grounds is a base, qualified or limited fee and is more than a mere easement, giving the exclusive possession and right of use of the land for the purposes contemplated by the law, a reversionary interest remaining in the United States to be conveyed by it to the person to whom the land may be patented, whose rights will be subject to those of the grantee of the right of way and station grounds.

15. Such grounds have the attributes of the fee, to wit, perpetuity and exclusive use and possession.

16. When the Secretary of the Interior approved the maps for the station grounds in question, that was an adjudication of the fact that such station grounds were necessary for the purposes mentioned, and the grant attached, and relates back to the time of filing the maps.

17. As the grant in question took effect, the question of forfeiture of such grant cannot be raised in this case, as the United States is the proper party to raise such question.

18. The conclusive presumption attending a United States patent for lands proceeds upon the assumption that the patent was issued in a case where the Department had the jurisdiction to execute it. But if the Department had no jurisdiction to convey such land, freed from the rights of another, such presumption does not prevail.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County. Hon. George H. Stewart, Judge.

Action to quiet title. Judgment in favor of plaintiff. *Affirmed.*

Hugh E. McElroy, and Frank Martin, for Appellants.

The patentee, having made final proof, after due notice by publication as required by law, the question of the validity of his claim is *res judicata* so far as the railroad company is concerned. (*Gilbert v. St. Joseph etc. R. R. Co.,* 1 Land Dec. 465; *Atlantic etc. R. R. Co. v. Forrester,* 1 Land Dec. 475; *Atlantic etc. R. R. Co. v. Buckman,* 3 Land Dec. 276; *In re Matthew Sturm,* 5 Land Dec. 295; *Brady v. Southern Pac. R. Co.,* 5 Land Dec. 407, 658; *Iverson v. St. Paul M. & M. Co.,* 5 Land Dec. 586; *Northern Pac. R. R. Co. v. Dow,* 8 Land Dec. 389; *Randolph v. Northern Pac. Ry. Co.,* 9 Land Dec. 417.)

A reasonable view of the law requires that the acceptance and notation on the plat of the right of way merely forms the basis of the claim of the railroad, as does the original application of the homesteader, and that the rights thereby initiated will be protected when the land is disposed of by the government. In fact, this law expressly speaks of the disposition of the land being made "thereafter." The notation of the claim on the record is merely a part of the action of the Department in approving the claim, and rather the beginning than the ending of the jurisdiction of that department, since that jurisdiction ends only with the issuance of patent. (*Phoenix & E. R. Ry. Co. v. Arizona Ry. Co.,* 9 Ariz. 434, 84 Pac. 1097; *Chicago K. & N. Ry. v. Van Cleave,* 52 Kan. 665, 33 Pac. 473; *Cathcart v. Minnesota etc. Ry. Co.,* 34 Land Dec. 619.)

P. L. Williams, and D. Worth Clark, for Respondent.

The station grounds having come to the respondent by grant duly approved by the Secretary of the Interior, and it having fully complied with all the provisions of the law, and all regulations of the department, it cannot be questioned on account of the failure of the local officers to make notations upon the plats in the local land office. (*Goist v. Bottum,* 5 Land Dec. 643; *Linville v. Clearwaters,* 11 Land Dec. 356; *Pomeroy v. Wright,* 2 Land Dec. 164; *Coal v. Markrey,* 2 Land Dec. 847; *Postle v. Strickler,* 3 Land Dec. 42; *Hawkins*

*v. Lamm,* 9 Land Dec. 18; *Baird v. Chapman,* 10 Land Dec. 210; *Richardson v. Moore,* 10 Land Dec. 415; *Yates v. Glafcke,* 10 Land Dec. 673; *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. 336, 27 L. ed. 201; *Lytle v. Arkansas,* 9 How. (U. S.) 314, 13 L. ed. 153.)

The law does not require any notation to be made upon the plats in the land office in the case of station grounds. Statutes requiring record of instruments affecting title to real property are contrary to the rule of common law, and unless there is some specific statute requiring it, no such record is necessary. (24 Am. & Eng. Ency., 2d ed., 71; *Warnock v. Harlow,* 96 Cal. 298, 31 Am. St. Rep. 209, 31 Pac. 166.)

When a grantee has duly deposited for record a valid instrument at the proper time, in the proper office and with the proper officer, he has performed his whole duty, and subsequent purchasers will be charged with constructive notice notwithstanding the officer does not properly spread the instrument on the record-book, or fails to record it at all. (24 Am. & Eng. Enc. 114; *Steam Stone Cutter Co. v. Sears,* 23 Fed. 314, 23 Blatchf. 194; *Hudson v. Randolph,* 66 Fed. 216, 13 C. C. A. 402; *Seibold v. Rogers,* 110 Ala. 438, 18 South. 312; *Oats v. Walls,* 28 Ark. 244; *Lewis v. Hinman,* 56 Conn. 55, 13 Atl. 143; *Kiser v. Heuston,* 38 Ill. 252; *Buckner v. Davis* (Ky.), 43 S. W. 445; *Hayden v. Pierce,* 165 Mass. 359, 43 N. E. 119; *Deming v. Miles,* 35 Neb. 739, 37 Am. St. Rep. 464, 53 N. W. 665; *Farabee v. McKerrihan,* 172 Pa. St. 234, 51 Am. St. Rep. 734, 33 Atl. 583; *Nichols v. Reynolds,* 1 R. I. 30, 36 Am. Dec. 238; *Jamestown R. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. ed. 698; *Telluride etc. Co. v. Rio Grande etc. R. Co.,* 175 U. S. 639, 20 Sup. Ct. 245, 44 L. ed. 305.)

When the Secretary of the Interior approved our maps for these station grounds at Meridian, that was an adjudication of the fact that they were necessary for such purpose, and the grant attached at the time of filing the map (*Phoenix & E. Ry. Co. v. Arizona Ry. Co.,* 9 Ariz. 434, 84 Pac. 1097; *Cathcart v. M. & M. Ry. Co.,* 34 Land Dec. 619; *Missouri etc. R. R. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794, 43 L. ed. 157.)

SULLIVAN, J.—This case was originally heard at the May term, 1907, of this court, and the opinion therein was filed on May 15, 1907. That opinion appears *ante*, p. 365, 94 Pac. 56, and in it the facts as stipulated and shown by the record are set forth quite fully. A rehearing was granted and the case was again orally argued and further briefs presented by respective counsel at the November term of this court.

The main question for decision is: Did Reed, the pre-emption claimant and patentee, under his pre-emption claim, take the legal subdivisions of the land included in his patent, subject to or exclusive of the railroad company's station grounds located thereon? It appears that Reed initiated whatever right he had to the land by a pre-emption filing dated October 18, 1888, and thereafter on April 24, 1889, made his final pre-emption proof, and later received a patent from the United States for said lands. It is stipulated by the parties that at the date of said Reed's pre-emption filing, the railroad was actually completed and in operation across said land, and that the railroad company caused to be made and filed in duplicate with the register of the U. S. land office at Boise City, Idaho, that being the United States land office of the district in which said land is situated, a profile or map of alignment of its said road in due form, the center line of which corresponds to the center line of said railroad as the same was thereafter constructed; that said profile map was upon February 17, 1888, duly approved by the Honorable Secretary of the Interior and sent back to the said United States land office at Boise; that said railroad from Nampa to Boise was constructed along said route prior to and was in operation on September 1, 1888; that on September 12, 1888, said railway company caused to be filed in duplicate with the register of said land office at Boise City, a map in duplicate showing the tract of land now in controversy claimed for station grounds, station buildings, turnouts, sidetracks, depot and water station; that said map was by the said register transmitted to the Honorable Secretary of the Interior and filed in his office September 20, 1888, and was by him ap-

proved December 15, 1888, and returned to the said register of the land office at Boise City.

And it appears from the record that the register of the local land office failed to note upon the plats in his office the station ground as shown by said maps as he was required to do by the regulations of the Interior Department concerning railroad rights of way over public lands under an act of Congress, which rules and regulations were approved by the Acting Secretary of the Interior January 13, 1888. (12 Land Dec. 423.) The record shows that the railroad company did all that it was required to do under said act of Congress and the said regulations of the Interior Department, to obtain the grant of the right of way and the grant of the station grounds. That being true, the question arises: Shall the railroad company lose its right simply because the officer of the government, to wit, the register of the local land office, failed and neglected to perform the duty required of him under said regulation, to wit, to note upon the plats in his office the station ground as indicated on said maps filed with him?

There is no provision or requirement in the act of March 3, 1875 (18 Stat. at Large, p. 482; U. S. Comp. Stat. 1901, p. 1568), requiring maps to be filed covering or designating station grounds. Section 1 of said act of Congress is as follows:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also, ground adjacent to such right of way for station buildings, depots, machine shops, sidetracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road."

And the fourth section of said act is as follows:

"That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and, upon approval thereof by the Secretary of the Interior, the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of sub-ject to such right of way: Provided, That if any section of said road shall not be completed within five years after the loca-tion of said section, the rights herein granted shall be for-feited as to any such uncompleted section of said road."

It will be observed from the provisions of said first section that "a right of way is granted to the extent of one hundred feet on each side of the central line of said road." This pro-vision refers to the right of way; that is, the right of way granted is two hundred feet in width, one hundred feet on each side of the central line of the road. A subsequent pro-vision in said section also grants "grounds adjacent to such right of way for station buildings, etc., not to exceed in amount twenty acres for such station, to the extent of one station for each ten miles of its road."

The only requirement with regard to maps and plats is found in said section 4 where it is provided that the railroad company shall "file with the register of the land office for the district where such land is located, a profile of its said road," and upon approval thereof by the Secretary of the Interior, it is provided that the same shall be noted upon the plats of said office. And it is further provided that "thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way." Those provisions apply only to the right of way. Under the provisions of said act, the station grounds are no part of the right of way but are "adjacent to" the right of way. The word "profile," as used in that act, is construed to mean a "map of align-

ment'' by the sixth section of regulations concerning railroad rights of way (approved by Secretary Hitchcock, February 11, 1904, 32 Land Dec. 481). Under the provisions of said section 4, the railroad company desiring to acquire the benefits of said act must file with the register of the land office for the district where such land is located, a profile of its road, and upon approval thereof by the Secretary of the Interior, such profile must be noted upon the plats of the office by the district officers, and said section also provides that "thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way." This requirement applies to the railroad right of way, and has no application whatever to the station grounds provided for in the first section of the act, which must be "adjacent to such right of way." Said act of 1875 contains no requirement for the filing of plats or maps designating the station ground selected, and the procedure relative thereto must be looked for in the rules and regulations of the Interior Department. (12 Land Dec. 423.) In those regulations, the Acting Secretary construes portions of said act, and under the regulations therein laid down, it is provided that if the company desires to avail itself of the provisions of the law granting ground adjacent to the right of way for station buildings, etc., it must file for approval a plat showing, in connection with the public surveys, the surveyed limits and areas of the grounds desired, and upon approval of such maps by the Secretary of the Interior, a copy must be transmitted to the proper district land office and upon the receipt of such copy, the local officers are required to mark the proper township plat accordingly, make the necessary notes on the tract-books, and in disposing of the tracts which may be included in the grounds so selected, the officers must note on the certificate of entry, in addition to the note concerning the right of way, that the entry is permitted subject to the use and occupation of such railroad company for station purposes.

In compliance with that regulation, maps were filed by the company in duplicate, in the local land office on September 12, 1888, showing the location of the station grounds, etc.,

as required by said regulation, one of which maps was forwarded to the Secretary of the Interior and approved by him on December 15, 1888, and returned to the local land office. The record shows that the railroad company did everything required to be done both by the act of 1875 and the rules and regulations of the Department in regard to the preparation and filing of the proper maps, but the neglect of the local officers to note on the proper plats in their office the location of such station grounds, it is claimed, defeats the right of the railroad company to the grounds in controversy. It is contended that because said officers neglected to make the proper notations on their plats as required by said regulations, the railroad company has lost whatever rights it might have secured had such officers performed the duty imposed on them by said regulation in that regard.

It is clear, under the stipulated facts, that the railroad company complied with all the duties imposed on it both by the statute and by the regulations of the Department to secure both the right of way and the station grounds. The maps, after being returned by the Secretary of the Interior and received by the local officers, were lost without any notation having been made upon the plats in the local office. It is not claimed that the respondent was in any manner at fault in any one of those particulars, but that because of the neglect of the local land officers to make the proper notations on their plats, and the loss thereof, the railroad company's right to the station grounds has been forfeited or never attached. It is contended that it was the duty of the railroad company to compel the officers of the local land office at Boise to do their duty and make the proper notations upon their plats as required by the regulations of the Land Department. We cannot agree with that contention. It would be just as reasonable to charge the loss of the plats to the company and hold it responsible for the loss.

Said plats were filed in the local land office on September 12, 1888, and on the following 18th day of October, patentee Reed made his entry. It does not appear from the record that said map was not on file at the time he made the entry.

There is nothing in the record to show whether the final certificate to Reed or his patent was expressly subject to the railroad's right of way or station grounds. It does not appear that the final certificate or patent did not contain such reservations.

While the act of March 3, 1875, is ambiguous in some respects, and its requirements are not altogether clear, the Land Department has construed some of its provisions one way and the courts another, the courts have agreed upon the proper construction of some of the provisions of said act. The courts have held that the grants provided for in said section are grants *in praesenti,* differing, however, from absolute present grants in that not only is the thing granted indefinite, but also the grantee is uncertain; that in order to make the grant effectual, it becomes necessary that there be a specific grantee and a definite location of the thing granted. By all authorities and decisions on the subject, it is conceded that as soon as any corporation referred to in the first section of said act filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization, such corporation becomes a grantee just as specifically and as definitely as if the name of the corporation were entered in the act itself. If that be true, the railroad company becomes the grantee of station grounds with the same force and effect as if the act of 1875 had specifically named it. The grant, however, is still a floating one until by some proper means the thing granted is located and defined. As soon as the grantee selects land subject to the grant, in the mode prescribed by the Department of the Interior, and advises the Department of such selection by filing its maps, the grantee has done all that the law requires of it, and the grant then becomes a fixity, not only as to the grantee, but of the thing granted.

But counsel for appellant contends that a notation upon the maps is a condition precedent to the grant. It is urged that the law fixes as definitely as language can the event after which the land shall be disposed of subject to the claim of the railroad company, and that event is after the notations

made on the plats, which act is required to be made there by the rules of the Land Department and not by the law. We do not question the authority of the Land Department to make proper rules and regulations in the general conduct of its business, and it is conceded that the railroad company complied with those rules and regulations in filing proper maps of its said station; but it contends that after it has done all that the law and the regulations require, its grant cannot be defeated by the neglect of an official to perform his duty; that its right to said station ground attached from the date of its filing the map of its station ground with the local officers and the approval thereof by the Secretary of the Interior. We fully concur in that position.

In *Railroad Co. v. Downey,* 8 Land Dec. 115, which was a case involving the station grounds of a railway company, the Honorable Secretary of the Interior said:

"It seems to me clear that the purpose of Congress in this fourth section was only to provide means by which railroads could define or definitely locate the right of way of 200 feet in width, with station grounds, etc., desired for the road which was to be thereafter constructed; and that, as in the case of other grants, or 'floats,' the right of the grantee in its relation to settlers on public lands attaches from the date of filing the map of definite location."

In the case at bar the railroad company did file its maps of definite location of its right of way and station grounds prior to the pre-emption claimant filing on said land.

There is not now nor has there been at any time any statute of the United States or regulation of the Department of the Interior that makes it the duty of an applicant for a railroad right of way or station grounds to see to it that the local land officers perform the duties imposed on them by the regulations or the statute. The failure of the local officer to make the required notation on the plats was nothing more nor less than the failure of such officer to properly keep a record in his office, and such failure cannot be charged up to the applicant and his rights defeated because of such neglect or failure. That neglect cannot defeat the applicant's rights,

as the law does not impose on him the duty of seeing to it that the local officer keeps his records as the regulations require. The respondent having complied with the law and regulations of the Land Department in filing its plats and securing the approval thereof by the Secretary of the Interior, its rights cannot be defeated because of official neglect of a clerical duty. Had Reed, the pre-emption claimant, made his entry prior to the date of the filing of the maps by the railroad company and the local land officer failed to comply with the land office regulations in regard to making the proper entry in the land office books and on the proper plats of such entry, and the railroad company had filed the map of its station grounds subsequent to such entry, under that state of facts no one would contend that Reed had lost his prior right because the land officers had failed to make the proper entries in the land office books and plats, and it would not be necessary for Reed, under those facts, to go into the courts to compel the land officers to perform their duty in order to protect his rights from a subsequent entryman. Neither was it necessary for the railroad company to resort to the court to prohibit the local officers from losing or misplacing the maps, nor to compel them to comply with the regulations of the land department in the matter of keeping their books and making the required notations on the land office plats.

In the case at bar, under the regulations of the Land Department, it was the duty of the register to make some notation whereby others might be informed as to the rights of the company in and to said station grounds, but his failure to do so cannot work to the injury of the railroad company. A similar question has been passed upon a number of times by the Secretary of the Interior. In the case of *Goist v. Bottum,* 5 Land Dec. 643, the Secretary of the Interior, in discussing a kindred subject, uses the following language:

"Both parties throughout seem to have acted in entire good faith, and done that which the law required in order to secure title to the desired land. The whole difficulty has arisen from the failure of the local officers to keep their records properly posted. Matters being thus *in equilibrio* a

most careful scrutiny of the whole case is imperatively demanded.''

And again on page 646 of the same decision, it is said:

''It follows naturally from the premise that the failure of the local officers to have noted upon the proper records of their office his claim against said tract, cannot be permitted to work to his prejudice inasmuch as he has done all the law required of him, and the officers alone are derelict in this duty.''

In the case of *Linville v. Clearwaters,* 11 Land Dec. 356, it is said:

''The entry of Clearwaters having been allowed, segregated the land, even though it may not have been entered of record, and the failure to place it of record would not affect his rights.''

The Department of the Interior has, so far as we know, held to this rule, and the cases decided so holding are very numerous and among them are the following: *Pomeroy v. Wright,* 2 Land Dec. 164; *Coal v. Markrey,* 2 Land Dec. 847; *Postle v. Strickler,* 3 Land Dec. 42; *Hawkins v. Lamm,* 9 Land Dec. 18; *Edward Young,* 9 Land Dec. 32; *Baird v. Chapman,* 10 Land Dec. 210; *Richardson v. Moore,* 10 Land Dec. 415; *Yates v. Glafcke,* 10 Land Dec. 673.

In the *Matter of Edw. R. Chase,* 1 Land Dec. 111, the Honorable Secretary Teller said:

''Thus it appears in the light of the foregoing summary of the history of this case that Chase's application in question was regularly and properly made at the time when the tract applied for was vacant public land, and therefore subject to such entry. The failure or refusal of the register to accept and properly note upon their office records his original application, and amendment of the same, could not jeopardize his rights in the premises.''

It is thus made to appear in the view taken of this question by the Department of the Interior, that the failure or refusal of the register to properly note upon his office records applications for public lands would not jeopardize the rights of the parties. The rule there stated is the rule of decision

as made by the Land Department, and it is also the law as laid down by the supreme court of the United States.  In *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. 336, 27 L. R. A. 201, Mr. Justice Field, speaking for the court, said:

"The route must be considered as 'definitely fixed' when it has ceased to be the subject of change at the volition of the company.  Until the map is filed with the Secretary of the Interior, the company is at liberty to adopt such a route as it may deem best, after an examination of the ground has disclosed the feasibility and advantages of different lines, but when a route is adopted by the company and a map designating it is filed with the Secretary of the Interior, and accepted by that officer, the route is established; it is, in the language of the act, 'definitely fixed,' and cannot be the subject of future change, so as to affect the grant, except upon legislative consent.  No further action is required of the company to establish the route.  It then becomes the duty of the secretary to withdraw the land granted from the market; but if he should neglect this duty, the neglect would not impair the rights of the company, however prejudicial it might prove to others."

There it is held that if the Secretary of the Interior should neglect his duty, such neglect would not impair the rights of the company, however prejudicial it might be to others.  That is the decision of the court of final resort in this class of cases, and it seems to us fairly and squarely decides that the neglect of an officer cannot operate to defeat a grant.

In *Lytle v. State,* 9 How. (U. S.) 314, 13 L. ed. 153, the supreme court of the United States lays down the general rule governing this question in the following language:

"It is a well-established principle that where an individual in the prosecution of a right does everything which the law requires him to do and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him."

Under the law and regulations of the Interior Department, after the railroad company has filed its map with the local officer, its duty ends.  It is made the duty of the local officer

to forward the maps to the Secretary of the Interior. In approving or rejecting such maps, the Secretary of the Interior acts in a judicial capacity, and after he has acted and approved the maps, the title of the company is complete. There is nothing further for the railroad company to do. As to what shall be done with the maps after the approval, and as to what record shall be kept of them is a matter solely for the Secretary of the Interior to say, as the law is silent and does not require any record to be kept thereof. As the law does not require the Secretary of the Interior or the local land officer to keep any records of station grounds, the railroad company, if it went into court for the purpose of compelling the register to make notations of such grounds on his maps, would have no law to support such action and would only have the regulations of the Department. We conclude that the failure of the land officers to do their duty could not in any way prejudice the rights of the railroad company to the station grounds at Meridian.

If it be conceded that sec. 4 of said act of March 3, 1875, has the force and effect of a statute requiring a record of an instrument affecting the title to real property, the great weight of authority seems to be that when a grantee has duly deposited for record a valid instrument at the proper time, at the proper office and with the proper officer, he has performed his whole duty, and subsequent purchasers will be charged with constructive notice, notwithstanding the officer does not spread the instrument on the records or fails to record it at all. (24 Am. & Eng. Ency. of Law, 2d ed., 71; *Farabee v. McKerrihan,* 172 Pa. St. 234, 51 Am. St. Rep. 464, 33 Atl. 583.)

A question is suggested as to the nature of the grant. The Honorable Acting Secretary of the Interior in a circular approved January 13, 1888, 12 Land Dec. 423, declares that "The act of March 3, 1875, is not in the nature of a grant of lands; it does not convey an estate in fee either in the 'right of way' or the grounds selected for depot purposes. It is the right of use only, the title still remaining in the United States." The construction of that provision of said

act was simply the opinion of the Acting Secretary of the Interior and was not binding on his successors in office, nor on the courts.

Secretary Hitchcock, in a circular containing regulations in regard to acquiring rights of way, etc., under the provisions of said act of March 3, 1875, approved February 11, 1904, 32 Land Dec. 481, said:

"The act of March 3, 1875, is not in the nature of a grant of lands; but it is a base or qualified fee, giving the possession and right of use of the land for the purposes contemplated by the law, a reversionary interest remaining in the United States, to be conveyed by it to the person to whom the land may be patented, whose rights will be subject to those of the grantee of the right of way."

While that definition may not be entirely clear, it indicates or contemplates an estate entirely different from a mere easement. We think that definition contemplates that the entire estate is by said act granted to the railroad company limited and qualified only in that the land shall be used for the purposes specified. If the land is forever used for those purposes, the grant is absolute and perpetual, and the title will only revert when the land ceases to be used for the purposes specified.

It was held by Secretary Hitchcock in *Melder v. White,* 28 Land Dec. 412, that the Northern Pacific Railroad Company, by sec. 2, act of July 2, 1864, holds its right of way under a qualified fee which, so long as the qualification annexed is not at an end, confers upon the company the exclusive right of possession, and that a settlement upon such right of way is not a settlement upon the public land.

In *Noble v. Union River L. R. Co.,* 147 U. S. 162, 13 Sup. Ct. 271, 37 L. ed. 123, the supreme court of the United States, when considering the nature of the grant under said act of March 3, 1875, said:

"The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled to the benefit of the grant was one which it was competent for the Secretary

of the Interior to decide, and when decided, and his approval was noted upon the plats, the first section of the act vested the right of way in the railroad company. The language of that section is 'that the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory,' etc. The uniform rule of this court has been that such an act was a grant *in praesenti* of lands to be thereafter identified.''

In *Northern Pac. Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044, the court had under consideration the nature and extent of the grant of a right of way by an act, the granting clause of which is essentially the same as the granting clause in the act of March 3, 1875. We think no material distinction can be justly drawn between the two provisions. The court said: ''Following decisions of this court construing grants of rights of way similar in tenor to the grant now being considered (*New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. ed. 407; *Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. ed. 578), it must be held that the fee passed by the grant made in sec. 2 of the act of July 2, 1864.'' The court proceeds to explain the kind of title passed by said grant, and stated that the grant was for a specified purpose and the land granted must be used for the specified purpose and could not be voluntarily alienated. The court said:

''The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted.''

That is the conclusion of the court of last resort upon this question and is conclusive.

The respondent, if it has any right to the premises in controversy (and we think it has), is the owner of a limited

fee, and has a right to the exclusive possession of the premises, and it is not for the courts to say when and when not the railroad company shall use its right of way or station grounds, as it is presumed that at all times it has need of the entire tract granted, since Congress has granted twenty acres for the purpose of station grounds. It is said in *Missouri K. & T. Ry. Co. v. Watson,* 74 Kan. 494, 87 Pac. 687, that "The estate granted to the Union Pac. Co. is corporeal in character rather than incorporeal, and corresponds to the limited fee for particular uses, subject to reverter, described in the Townsend case." The estate granted under the act of March 3, 1875, is more than a mere easement. It amounts to a base qualified or limited fee, and so long as the company maintains its line of road and its station where said station ground is located, it has the right to the exclusive possession of the same.

In *New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. ed. 407, the court discusses and defines the phrase "right of way." The court says:

"What, then, is meant by the phrase 'the right of way'? A mere right of passage, says appellant. *Per contra,* appellee contends that the fee was granted, or, if not granted, that such a tangible and corporeal property was granted," etc.

Further on in the opinion the court referred to the case of the *Missouri K. & T. Ry. Co. v. Roberts,* 152 U. S. 114, 14 Sup. Ct. 496, 38 L. ed. 377, the opinion in which was written by Mr. Justice Field. Referring to the effect of that decision and the distinction between an easement and the fee, the court said:

"The effect of this decision is attempted to be avoided by saying that the distinction between an easement and the fee was not raised. The action was ejectment, and was brought in Kansas, and under the law of that state, title could be tried in ejectment. Title was asserted by Roberts, who was plaintiff in the state court, and this court evidently considered it involved in the case. The language of Mr. Justice Field, who delivered the opinion of the court, would be unaccountable else. The difference between an easement

and the fee would not have escaped his attention and that of the whole court, with the inevitable result of committing it to the consequences which might depend upon such differences.''

And the court further said: ''But if it may not be insisted that the fee was granted, surely more than an ordinary easement was granted, one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property.''

There it is held that such grants have the ''attributes of the fee, perpetuity and exclusive use and possession.'' There is nothing in the contention of counsel that the appellant who holds the legal title has the right to the use and possession of said station ground until it is needed by the company, as the company, under the authorities, has the exclusive right to the use, possession and occupation of the ground, whether its buildings and improvements cover it all or not.

In the former opinion of this court rendered in this case, the court proceeded upon the theory that a notation upon the plats in the local land office was a condition precedent to the grant of station grounds. If it be conceded that the act of March 3, 1875, so far as filing plats is concerned, applies to station grounds as well as to rights of way, and that the same acts must be done in order to acquire title to station grounds as to rights of way, the law seems to be that the grant becomes fixed definitely either by actual construction of the railroad before the filing of a profile map thereof, or in advance of construction by filing a profile as provided in section 4. (*Jamestown R. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. ed. 698; *Telluride etc. Co. v. Rio Grande etc.,* 175 U. S. 639, 20 Sup. Ct. 245, 44 L. ed. 305.)

It would appear from the rulings of the land department and the decisions of the court that the right of the railroad attached at the date of its filing its maps. (See *Railroad Co. v. Downey,* 8 Land Dec. 115.) In the *Matter of the St. Paul M. & M. Ry. Co.,* 26 Land Dec. 181, after quoting in full sec. 4 of the act of March 3, 1875, the Honorable Secretary said:

"Where a company has complied with the law by filing its Articles of Incorporation and due proof of organization. it is clearly entitled to a grant under the act of March 3, 1875 (*supra*). To secure this right, however, it must file maps of the location of its road, and plats of necessary station grounds. It is true the law makes the maps and plats filed by the companies subject to approval by the Secretary of the Interior, and it would seem that until approved, no right is vested in the company thereunder.

"After filing the maps and plats as required by the statute, the company has done every act necessary to be performed on its part.

"Much time must necessarily elapse before these maps can go through the regular course of examination and be presented to the Secretary of the Interior for his approval.

"Is the company's right in jeopardy, although it may be in the actual use of the land during this period, and can its right be made to depend upon the action of others, as would be the result of your office decision? It is not believed that such was the intention of Congress, but rather that in determining whether a map should be approved the condition existing at the time of its filing must control."

(See, also, *Railroad Co. v. Downey,* 8 Land Dec. 115; *Phoenix & E. R. Co. v. Arizona Eastern Ry. Co.,* 9 Ariz. 434, 84 Pac. 1097; *Cathcart v. M. & M. Ry. Co.,* 34 Land Dec. 619; *Missouri Pac. Ry. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794, 43 L. ed. 157.) Under those authorities, when the Secretary of the Interior approved the maps for the station grounds at Meridian, that was an adjudication of the fact that such grounds were necessary for the purposes of station grounds and the grant attached at the time of filing the maps. If the grant took effect, the question of forfeiture cannot under any theory enter into this case, for the reason that under the repeated rulings of the Land Department and decisions of the courts, the only person who is in a position to take advantage of the forfeiture of a right of way is the United States government, and, of course, under the facts as presented in this case, it would be absurd to say that the

United States could forfeit the railroad company's rights on account of the failure of the register of the local land office to make proper notations upon his plats.

It is contended that Reed made final proof under his pre-emption filing after due notice by publication, as required by law, and as the railroad company did not appear and contest his right to enter said land, the company cannot now raise the question of the validity of his entry—that it is *res judicata.* That contention might obtain if the Land Department had jurisdiction to convey said land free from the prior right thereto of the railroad company, which right existed at the time the land department issued the patent to Reed. As that Department had no jurisdiction to act and execute said patent, unless it reserved the rights of the railroad company therein, the conclusive presumption attending patents generally does not attach to the patent under consideration. In *St. Louis S. & R. R. Co. v. Kemp,* 104 U. S. 636, 26 L. ed. 875, Mr. Justice Field, in discussing the conclusive presumption attending a United States patent for lands, said:

"Of course, when we speak of the conclusive presumption attending a patent for lands, we assume that it was issued in a case where the Department had jurisdiction to act and execute it."

(See *Patterson v. Winn,* 11 Wheat. 380, 6 L. ed. 500.) The right of the railroad company having attached to said land prior to Reed's entry, the Land Department could not devest it of its right by conveying the land to him, as it had no authority to do so. We therefore conclude that Reed, the patentee, did take the legal subdivision covered by his patent, which includes the lots in controversy, subject to the railroad company's right of way and station grounds, and for that reason the former decision of this court must be overruled and the judgment of the trial court must be affirmed, and it is so ordered.

Costs of this appeal are awarded to the respondent.

Stewart, J., concurs.

AILSHIE, C. J., Dissenting.—After a very careful examination of the majority opinion, and of all the cases cited

by the respective parties, and all the authorities I can find
upon the subject, I am satisfied that the conclusion reached
by the court on the former hearing is correct and should
stand as the judgment of this court. The former opinion,
however, was written on the theory that the act of Congress
provided for filing a profile map of station grounds and
thereby prescribed a method whereby a railroad company
could accept the grant and take a constructive possession of
the grounds as distinguished from actual possession. Upon
a further examination of this matter, I am in accord with that
portion of the majority opinion, which, as I understand it,
holds that the act of Congress makes no provision for filing
a profile map of station grounds, and that so far as the stat-
ute is concerned, there is no statutory method provided for
acquiring a constructive possession of station grounds and
giving constructive notice to third parties who might enter
or purchase such grounds. The majority opinion, however,
seems to hold that in the absence of congressional action, the
Secretary of the Interior has adopted a rule whereby he
permits the railroad company to file a profile map of its sta-
tion grounds at the same time and in the same manner it
files a profile of its right of way, and provides that the com-
pany may have the advantage of a constructive possession of
the grounds and be protected for the five year period in ad-
vance of construction of the road the same as it can for its
right of way under section 4 of the act of March 3, 1875.
I am wholly unable to agree with this latter proposition. I
have no doubt of the right of the Secretary of the Interior
to adopt rules and regulations for the transaction of the
business of that department and the practice to be pursued
therein. On the contrary, I am equally satisfied that the
secretary has no power or authority to adopt or promulgate
any rule or order whereby preference rights may be conferred
upon claimants to the public lands or a constructive right
may be initiated in violation of the statutory rights of other
claimants. The conditions on which the public lands shall
be granted are prescribed by the acts of Congress and cannot
be changed, supplemented or altered by the Department of
the Interior. The grant conferred by the act of Congress is

a mere gift made by the government to the railroad company, and contains no element of a contract until after the grantee has received and accepted the gift and acted upon it. Of course, after it has entered into possession of the lands and commenced the construction of its road, it might be said to have parted with a consideration for the grant. It must be conceded that the donor, the grantor in this case, has a right to attach any conditions it sees fit to the vesting of any right in the donee. It may make that condition depend upon acts to be performed by the donee or acts to be performed by the donor, or both, or it may make it contingent upon the happening of a certain event. It has been uniformly held by all the courts that the title vests, under section 1 of the act, upon the construction of the road, and that in the latter event it was unnecessary to file any maps whatever. (*St. Joe etc. R. R. Co. v. Baldwin,* 103 U. S. 426, 26 L. ed. 579; *Bybee v. Oregon etc. R. R. Co.,* 139 U. S. 663, 11 Sup. Ct. 641, 35 L. ed. 309; *Oregon Short Line R. R. Co. v. Quigley,* 10 Ida. 770, 80 Pac. 401.) Where, on the other hand, the company seeks to reserve the right in advance of construction of its road under the provisions of section 4 of the act, it must comply with those conditions before the lands can be said to have been legally reserved from the public domain so as to prevent any subsequent settler or purchaser from acquiring a paramount right. This latter section requires certain things to be done by the railroad company and certain things to be done by the Department of the Interior. The railroad company must file with the register of the land office (who is under the direction and control of the Secretary of the Interior and an officer of the Interior Department) a profile map of its road. The map must be approved by the Secretary of the Interior and the approval must be noted on the land office plats. The approval of the plat by the secretary is as much an act of the government and of a government official as is the notation on the plats; but according to the reasoning of my associates, the failure, neglect or refusal of the public official to perform a duty cannot prejudice a person or corporation dealing with the government. Therefore, the

failure to make the notation on the plat cannot affect the railroad company. I would add further, by the same course of reasoning: ''Therefore, the failure of the secretary to approve the plats could not affect the right of the railroad company to take its right of way or station grounds.'' The latter conclusion is just as reasonable and logical in this case as is the former conclusion drawn by my associates. There happens to be, however, authority on the latter proposition. In *Phoenix & E. R. Co. v. Arizona Eastern R. Co.*, 9 Ariz. 434, 84 Pac. 1097, two railroad companies had filed their profile maps in accordance with the provisions of the act of Congress of March 3, 1875, but neither one of them had been approved by the Secretary of the Interior. They went into court to determine their respective rights, and the one that had first filed its maps with the secretary contended that its right attached and vested upon its filing the map with the secretary. The supreme court of Arizona held in that case that no right could vest or attach prior to the approval by the secretary; that his approval was one of the conditions precedent. The question of the proper notation on the plats did not arise in that case, and, of course, was not considered. The court did use, however, the following language: ''In construing the act we should note the significance of the expression 'thereafter' (that is, after the approval of the profile by the secretary and the noting of the same upon the plats in the land office) 'all such lands over which such right of way shall pass shall be disposed of subject to such right of way.' This expression is by its implication inconsistent with the theory that the legal title has passed prior to action by the secretary.'' It is further worthy of note that the writer of the foregoing opinion defined ''thereafter'' as meaning ''after the approval of the profile by the secretary and the noting of same upon the plats in the land office.''

As to the grant contained in section 1 of the act of 1875 being a present grant in the sense that upon the definite location of the right of way the title would be deemed to vest as of the date of the act, that has been settled beyond all question. The act is not a grant *in praesenti* in that sense

at all, and it has never been directly so held by any court. (See *Spokane & N. Ry. Co. v. Ziegler,* 61 Fed. 393, 9 C. C. A. 548, and cases cited; *Hall v. Russell,* 101 U. S. 509, 25 L. ed. 829; *Red River etc. R. Co. v. Sture,* 32 Minn. 95, 20 N. W. 229.)   This identical question was considered by the supreme court of Kansas in *Chicago etc. Ry. Co. v. Van Cleave,* 52 Kan. 665, 33 Pac. 475, and the case of *Noble v. Ry. Co.* was reviewed and considered at some length, and the conclusion was reached that the observation that the grant was one *in praesenti* was *dictum* only and not the decision of a question involved in the case.

Laying aside for the time all other considerations, it seems to me that the decisive and pivotal point to be determined with reference to station grounds is: When does the right or title or estate attach or vest in the railroad company? In the first place, the only mention of depot and station grounds to be found in the act is in section 1 thereof. Section 4, which provides for filing the profile map, makes no mention of depot or station grounds. By an analysis of section 1 we find it contains the following grants: 1st. The right of way through the public lands of the United States is hereby granted to any railroad company organized, etc. 2d. The right is also hereby granted to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad. 3d. The right is also hereby granted to take ground adjacent to such right of way for station buildings, depots, etc. Now, remembering that under section 4 the easement for right of way may be reserved for a period of five years by making a certain record, we naturally inquire how the "right to take" shall be determined as to earth, stone and timber, and also as to station and depot grounds. Bearing in mind that no method is provided for a constructive taking, we naturally inquire when the taking occurs and what acts are necessary to constitute the taking within the meaning of section 1 of the act. It is settled law that as to third parties who seek to settle upon or purchase the public domain, no lands are public lands which have been filed upon prior to the time the claim

of such third party is asserted. (*Hastings & Dakota R. Co. v. Whitney,* 132 U. S. 357, 10 Sup. Ct. 112, 33 L. ed. 363; *Sturr v. Beck,* 133 U. S. 541, 10 Sup. Ct. 350, 33 L. ed. 761; *Witherspoon v. Duncan,* 71 U. S. 210, 18 L. ed. 339; *Red River etc. R. Co. v. Sture,* 32 Minn. 95, 20 N. W. 229.) It must therefore be conceded, it seems to me, that the right to take timber and stone from lands adjacent to the line of road must be determined by the status of the land at the time of the actual taking. If at such time the land is the public lands of the United States, the company has the undoubted right to take therefrom stone, timber, etc., for the construction of its road. If, however, the land has been filed on by the homesteader or pre-emptioner prior to the date of the actual taking, then the land is no longer public lands of the United States and is not within the purview of section 1 of the act. It seems to me that the same thing is true of station and depot grounds. The "right to take" grounds for such purposes must be determined by the status of the lands at the time of the actual taking. Such taking might be evidenced by staking it off and marking it on the grounds, or by fencing it or constructing buildings on it, or in any other manner that is ordinarily recognized by the law as amounting to an actual possession of real estate. In the case at bar there was not even a station at Meridian at the time the pre-emptioner filed on this land. The company did not take possession of the ground in any manner, nor did it do any act that evidenced its intention of claiming station grounds, nor did it make any claim to this ground for seventeen years thereafter.

It is apparent to me at once from the state of facts in this case that a grave and serious injustice and inequity will be done the entryman on this land if the railroad company is permitted at this late date to take twenty acres out of his land as claimed by the company. It is an admitted fact in the case that the pre-emptor filed on the land, paid for it, and received his patent in absolute and total ignorance of any claim by the railroad company, and he and his grantees continued in possession of the land for some seventeen years thereafter without the company asserting any right or claim

to the station grounds or attempting to take possession thereof, and yet in the face of that state of facts, it is proposed to oust him of his possession and give this land to the railroad company. I decline to sanction a judgment that will have that effect. I am wholly unable to find a decision from any court that either supports or upholds the doctrine laid down in the majority opinion when it comes to station or depot grounds. The confusion has, in my judgment, arisen in this case in an attempt to apply the law and decisions with reference to rights of way to station and depot grounds.

If it should be admitted, on the other hand, that the grant for station grounds may be definitely located and segregated in the same method as is provided for rights of way, namely, by filing a profile map of definite location, still it would seem that in cases where possession has not been actually taken, title does not pass until after the notation on the land office plats. It will be noticed that section 4 of the act of 1875 requires the claimant to file with the register of the land office a profile of its road and upon approval thereof by the Secretary of the Interior, *and a notation thereof on the plats* of the land office, that "thereafter" all lands over which such right of way shall pass shall be disposed of subject to such right of way. Conceding, now, that there is no necessity for a plat where the company has taken actual possession and constructed its road or station buildings, we are then reduced to the proposition that the profile map only serves the purpose of reserving the lands belonging to the United States at the time the acts required in section 4 are performed from the operation of the public land laws. In other words, it protects the company for the period of five years by giving a constructive notice which takes the place of actual occupation and reserves all rights to the company for that period of time. With this in view we must read section 4 to ascertain what acts the word "thereafter" refers to. We are naturally led to the question: Does it refer to the act of filing the profile map with the register of the land office, or does it refer to the act of approval by the Secretary of the Interior, or does it apply to the act of making the notation on the plats of the

land office, or does it apply to any two of those acts, or does it apply to all those acts? I submit that by every rule applicable to the construction of the English language, it must necessarily refer to all the acts previously enumerated, and means that *after* the performance of those acts the rights claimed shall be reserved to the company, and that all the lands in which such rights have been acquired, by performance of all the acts therein enumerated, shall be "thereafter" granted *subject to such rights*. This view is clearly indicated in the case of *Noble v. Union River Logging Ry. Co.*, 147 U. S. 165, 13 Sup. Ct. 271, 37 L. ed. 123, quoted from in the majority opinion. In that case the statement of facts was prepared by the same justice (Brown) who wrote the opinion. In making that statement he said: "In January, 1889, the company, desiring to avail itself of an act of Congress of March 3, 1875 (18 Stat. at Large, 482; U. S. Comp. Stat. 1901, p. 1568), granting to railroads a right of way through the public lands of the United States, filed with the register of the land office at Seattle a copy of its articles of incorporation, a copy of the territorial law under which the company was organized, and the other documents required by the act, together with a map showing the termini of the road, its length, and its route through the public lands according to the public surveys. These papers were transmitted to the Commissioner of the Land Office, and by him to the Secretary of the Interior, by whom they were approved in writing, and ordered to be filed. They were accordingly filed at once and the plaintiff notified thereof." It should be observed that in this statement of facts the learned justice refers to the profile required to be filed under section 4 of the act as a "map" and to all the documents used in connection therewith as the "papers." Keeping this in mind, let us note the language used in the opinion itself. In speaking of the action of the Secretary of the Interior, the writer of the opinion enumerated all the acts required by section 4 of the act of 1875, and then adds that when these things were done the granting act became operative. His language is: "Upon being satisfied of this fact, and that all the other requirements of the act

had been observed, he was authorized to approve the profile of the road, and to cause such approval to be noted upon the plats in the land office for the district where such land was located. When this was done, the granting section of the act became operative, and vested in the railroad company a right of way through the public lands to the extent of 100 feet on each side of the central line of the road. (*Frasher v. O'Connor*, 115 U. S. 102, 5 Sup. Ct. 1141, 29 L. ed. 311.) There the court indicated that all these acts are conditions precedent.

Further considering the power of the Secretary to act in the premises and the time when the rights of the railroad company became vested, the opinion says: "The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled to the benefit of the grant was one which it was competent for the Secretary of the Interior to decide, and when decided, *and his approval was noted on the plats,* the first section of the act vested the right of way in the railroad company." (See, also, *Red River etc. R. Co. v. Sture*, 32 Minn. 95, 20 N. W. 230.)

*Dakota Central R. R. Co. v. Downey*, 8 Land Dec. 115, instead of supporting the contention made by the majority of the court, is, to my mind, against its conclusion. That was a case where the railroad had already been constructed before the entryman filed upon his land, and the secretary held that it was unnecessary in such case for the company to file its map or have any notation made on the land office plats. As heretofore suggested, the authorities are all one way on that question. In the course of that opinion the secretary states what must be done where an attempt is made to reserve the land prior to the construction of the road, and uses the following language: "The cases in which notes are to be made on the entries of public lands are those of entries made before the construction of the road, for the purpose of excepting the grant to the railroad company, thus made upon the condition that the road shall be completed within five years, or the grant shall be forfeited."

Neither is the case of *Van Wyck v. Knevals*, 106 U. S. 360, 1 Sup. Ct. 336, 27 L. ed. 201, in point. That case considered

the act of Congress of July 23, 1866, granting a right of way to the St. Joe & Denver City R. R. Co., and also granting to the state of Kansas, for the benefit of that road, the alternate sections of land within ten miles of the line of such road. The language of that act is entirely different from the act of March 3, 1875, and the distinction has been pointed out between the two acts in many decisions since that time wherein the Van Wyck case has been considered and distinguished. (See 10 Notes on U. S. Rep. 391.)

It is suggested by the majority opinion that the act of March 3, 1875, is ambiguous in reference to station and depot grounds. If that be true, the majority of the court have evidently reversed the rule which requires a strict construction against a donee or grantee of the United States and in favor of the grantor. In this case, after the government had, as the railroad company claims, parted with its title to this easement, it conveyed the entire title without reservation to the pre-emptor. Now, under the rule, if there is the slightest doubt as to whether the government parted with any title upon the railroad company's application for station grounds, that doubt should be resolved in favor of the government and of its right to subsequently grant the title free of the servitude claimed by the railroad company.

In *Wiggins Ferry Co. v. East St. Louis,* 107 U. S. 371, 2 Sup. Ct. 261, 27 L. ed. 419, the supreme court of the United States said: "It is a rule of interpretation that every grant from the sovereign authority is, in case of ambiguity, to be construed strictly against the grantee and in favor of the government."

In *United States v. Michigan,* 190 U. S. 401, 23 Sup. Ct. 749, 47 L. ed. 1103, the supreme court, speaking through Mr. Justice Peckham, reiterated the same doctrine and, among other things, said: "Any ambiguity must operate against the grantee in favor of the public. This rule of construction obtains in grants from the United States to states or corporations in aid of the construction of public works."

It seems to me that my associates erred when they attempted to apply to this case the rule applicable to a purchaser of

land where he deposits his deed with the recorder, and that officer fails to duly record the deed within the proper time. There is no question about that doctrine, and I take it no one would seriously contend that a purchaser of land would lose his property or be devested of his title by reason of the failure of the recorder to record the deed. But there is no analogy between that case and the case at bar, nor is the same principle necessary or applicable to attain the ends of justice. In this case the government says to the railroad company: We will give you certain public lands and rights that now belong to the United States, but before you can be vested with that right, and entitled to its enjoyment, you shall do certain things, and the officer of the grantor, the government, shall also do certain things. Until all those acts are performed, the grantee acquires nothing, and therefore has nothing to lose or forfeit. It is true, as stated in the original opinion, the performance of the first act creates an inchoate right which the railroad company may either mature into a vested right or it may allow it to lapse. It may never pursue its right to the extent of acquiring a property right therein either as against the government or subsequent settlers or purchasers. It is one thing to have a valuable right already acquired for which a consideration has been given, and lose that right on account of the negligence or failure to act on the part of a public official, but quite another thing to have a prospective, conditioned or anticipative right, the acquisition of which is dependent upon certain acts to be done by a public official, and which acts are never done by him. In the latter case, the failure to discharge those acts does not deprive the company of any property right because it had not yet acquired any property right. In such case its prospects and anticipations never ripened into a legal right. It is merely a failure to vest the property right he is attempting to acquire. In this case, the railroad company has parted with no consideration and is purely a donee as distinguished from a purchaser, of whatever rights it has acquired. On the other hand, the pre-emptor is a purchaser for value and has parted with a consideration for the property.

I am forced to the conclusion: 1st. That the railroad company in this case should be bound by the status and condition of the land as it found it at the time it sought to take the station grounds, and that the attempt to take occurred when it asserted its claim to the grounds for such purpose and attempted to take actual possession thereof.   2d. That at the time the company sought to take the ground it was no longer public lands of the United States, but was the private property of the defendant.   3d. That if it were conceded that the act of Congress authorizes a constructive taking and segregation of depot and station grounds, that in the case at bar the acts necessary to complete that constructive taking and appropriation within the provisions of the act were never completed, in that the reservation was never made upon the land office plats, and consequently no notice thereof was ever given by either the company or the government to subsequent purchasers and entrymen.   4th. That the government never recognized the acts of the railroad company as amounting to an appropriation and segregation of station grounds, for the reason that it thereafter granted the land in fee simple to the defendant's predecessor without any reservation whatever and free from the company's alleged servitude.

For the foregoing reasons, I am convinced that the judgment of this court as originally announced should stand, and I accordingly dissent from the views expressed by the majority of the court on this hearing.